Law Office of Shmuel Klein PA
Attorney for Plaintiffs
113 Cedarhill Ave
Mahwah, NJ 07430
845-425-2510

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
_____x
Michael Chieco, April Achord, Jennifer Everett,  Josh
Keener, Donna Hunborg, Daniel Reilley, Terri Sackos,
Kimberle Zimmerman, Barbara Myers individually
and on behalf of all others similarly situated,
Plaintiffs,
vs.
KIA MOTORS AMERICA INC;
Hyundai Motor Company, XYZ CORP
Defendants.                                          Case No.:
_____x

## PLAINTIFFS' CLASS ACTION COMPLAINT
## DEMAND FOR JURY TRIAL

Plaintiffs Michael Chieco, April Achord, Jennifer Everett,  Josh Keener, Donna Hunborg, Daniel

Reilley, Terri Sackos, Kimberle Zimmerman, Barbara Myers  (collectively Plaintiffs") bring this

class action against Defendants KIA Motors America, Corporation ("KIA") and Hyundai Motor

Company ("Hyundai"); or hereinafter collectively "Defendants"  on behalf of themselves and all

others similarly situated.  Plaintiffs allege upon personal knowledge and belief as to their own acts,

and upon information and belief (based on the investigation of their counsel) as to all other matters.

## INTRODUCTION

1.      This class action lawsuit seeks  injunctive and declaratory relief, compensatory, punitive,

statutory damages, and  reasonable attorney fees and costs on behalf of all persons in the United

States and its Territories, who purchased as consumers on behalf of themselves and the class(es)

defined as current and former owners and lessees of certain vehicles as follows: 2011 -14 KIA

Optima; 2011 – 14 class vehicles and the 2011 – 13 KIA Sportage, and Hyundai 2011 – 14 Santa Fe

and Sonata; these models use the Hyundai 2.0 liter and 2.4 liter engine (hereinafter referred to as the

1

"Class Vehicles").  It is alleged the engines in these specific vehicles contain metal debris leftover from Defendants' defective manufacturing process of deburring the crankshaft in the engine.  The engine is assembled with the metal debris and engine oil is added to the assembled engine.  The metal debris mixes with engine oil and creates oil sludge which clogs oil ports and prevents vital and necessary lubrication of the engine's moving parts in the engine power train, and the oil sludge containing the metal debris, instead of lubricating the engine, also acts as an abrasive on the moving engine parts prematurely wearing out those parts, to the point that the engine parts seize, which stops engine operation while running and causes the engine to fail and often catch fire in the stated class vehicles (hereinafter referred to as the metal debris problem or problem).  The engines fail, the vehicles often catch fire, costing the Plaintiffs tens of thousands of dollars in repairs, car payments for a near worthless non-operable vehicle and often total loss of the vehicle.  This problem makes the vehicle a hazard to owners and other individuals who may be in harm's way.  Plaintiffs' credit is also ruined when Defendants promise to pay-off the financing on the Class vehicle when the cost to repair exceeds the value of the vehicle or when it is destroyed by fire as a result of the said known problem.

2.      Through a common and uniform course of conduct, and despite their longstanding knowledge of the problem, the Defendants' failed to disclose and did mislead Plaintiffs and other consumers that  the Class vehicles are predisposed to engine failure as a result of metal debris left in the engines during Defendants manufacturing process which mixes with engine oil and creates excessive oil sludge which clogs the oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the above stated vehicles. The oil sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out the engine parts within the Class vehicles. This failure requires costly repairs to remedy.  Not only did KIA and Hyundai actively conceal and mislead in a material respect Defendants manufacturing design defect of the metal debris problem to the owners

of the Class vehicles, but it also did not reveal that it would pose a serious safety hazard and further diminish the intrinsic resale value of the class vehicle.   Furthermore, through a common and uniform course of conduct, Defendants failed to honor both federally mandated and voluntarily offered warranties and extended warranties that would have required them to recall and repair or correct, at no cost to the consuming public, nonconforming and/or defective vehicle(s).

3.      Upon information and belief, Defendants have been aware of the true nature and cause of the defective manufacturing process leaving metal debris and resulting excess oil sludge which clogs the defective oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the above stated vehicles and acting as an abrasive the oil sludge prematurely wears out the engine parts causing the engine to seize and often, the vehicle to catch fire.  This knowledge is evidenced by accounts from class members who have complained about this very issue to Defendants, technical service bulletins issued by Defendants for the purpose of attempting to address this problem, and widespread complaints on the internet. Hyundai's 2011-2014 Sonata and Santa Fe Sport were recalled.   KIA finally issued a recall as well, covering about 618,000 2011-2014 Optima, 2011-2014 Sorento and 2011-2013 Sportage.  It took more than a full year to expand the recall to include those additional vehicles after the National Highway Traffic Safety Administration (NHTSA) began its investigation. Defendants knew its vehicles had the same 2.0 liter and 2.4 liter engines for the class vehicles were subject to the recall because of the metal debris problem.  Notwithstanding this knowledge, Defendants intentionally withheld from and/or misrepresented and mislead Plaintiffs and other consumers of Class vehicles this material information. Meanwhile, Defendants made numerous affirmative statements touting the high-quality and reliability of the Class vehicles and the integrity of its warranties.

4.      As a result of Defendants manufacturing process of deburring the crankshaft leaving metal debris in the engine mixing with oil creating oil sludge which prevents adequate lubrication of the engine and instead of lubricating the engine, acts as an abrasive on the moving engine parts

prematurely wearing out those parts of the Class vehicles, resulting in total engine failure and often vehicle fire. The Defendants have benefited from collecting funds from the Plaintiffs for the purchase of the said Class vehicles,  for vehicle service procedures such as diagnosing total engine failure and  excessive oil sludge in the Class vehicles.  The metal debris problem results in Plaintiffs paying out of pocket for towing, engine replacement, troubleshooting, car payments, car rentals, loss of credit, diagnosing the engine failure or total vehicle replacement for the above stated vehicles.  Defendants knew the true cause of the engine failure was from Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles.  The engines seize while running, leaving Plaintiffs stranded and having to pay for repairs when Defendants would not repair; or worse, many vehicles would catch fire resulting in total destruction of the class vehicle(s).

5.      Many owners and lessees of the Class vehicles had to repair or replace their entire engine as a result of from Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and the oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles, to return their vehicle to the expected operating condition that Defendants represented.

6.      The Class vehicles pose significant safety risks as a result of the Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation

system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles. This condition causes the Class vehicles' engine to cease operation while driving and many vehicles catching fire and creating a very dangerous instrumentality on the road and a real threat to others in proximity to the vehicle.  This creates a serious safety concern to occupants of the Class vehicles, the occupants of other vehicles, and the public in general.

7.      Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles.are uniformly and inherently defective, and the engine and its parts prematurely wear out under normal operating conditions well in advance of their expected useful life.

8.      As a result of Defendants' unfair, misleading, deceptive and/or fraudulent business practices, in failing to advise class members of the engine debris from Defendants manufacturing process, the Class vehicles engine fail, requiring expensive repairs, car rentals, car payments, towing charges and the vehicles have a lower market value, and are inherently worth less than they would be in the absence of Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine causing the engines to fail for the Class vehicles**.**

9.      For customers with Class vehicles within the written warranty period, Defendants have done no more than issue a technical bulletin to advise its service departments of Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine

oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles.   Defendants offer a diagnosis or an oil change at the owners expense after the damage to the engine as a result of the metal debris problem.  Besides technical bulletins and a belated National Highway Traffic Safety Administration (NHTSA ) mandated recall, Defendants refused to take any action to reimburse Plaintiffs for their out of pocket repairs, rental of a substitute vehicle, finance charges, towing and other expenses to correct this concealed manufacturing design defect when it manifests in Class vehicles within or outside the warranty period.

10.     Defendants' knowledge of the said concealed manufacturing design defects and failure to disclose the fact that Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure, typically manifests shortly before or just outside of the warranty period for the Class vehicles. Defendants attempt to limit the warranty with respect to the total engine failures for the above stated vehicles problem, is unconscionable.

11.     As a result of Defendants' unfair, misleading, deceptive and/or fraudulent business practices of the concealed manufacturing design defects and failure to disclose the fact that the metal debris from Defendants manufacturing process, results in excessive oil sludge clogging defective oil ports and failure of the oil circulation system to adequately lubricate the vital moving parts of the internal combustion engine, and instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  for the above stated vehicles, owners and/or lessees of

6

Class vehicles, including Plaintiffs, have suffered an ascertainable loss and are aggrieved consumers having suffered monetary or other harm of money and/or property and/or value in the costs for engine replacement,  rental payments, towing and car payments on a useless vehicle, damage to credit and many other costs in obtaining another vehicle..

12.     Plaintiffs bring this action to redress Defendants' misconduct of the concealed manufacturing design defects and failure to disclose the fact that Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure and often vehicle fire, Plaintiffs seek recovery under state consumer protection statutes, lemon laws and for breach of express warranty, breach of implied warranty, and unjust enrichment and reimbursement of all expenses associated with the repair or replacement of the class vehicle.  The purpose of this action is to hold Defendants accountable, and to obtain maximum legal and equitable relief from Defendants for producing the Class vehicles and placing them into the stream of commerce. These vehicles are a danger to the public and don't belong in commerce.  The vehicles do not conform to durability and longevity of vehicles reasonably expected by retail consumers or to the statements and affirmations made by Defendants in connection with the sale and delivery of the vehicles to retail consumers.

## **JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d)(2) and (6) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one

defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendants transact substantial business in this district. Defendants have advertised in this district and have received substantial revenue and profits from sales and/or leases of the Class vehicles in this district; and have a manufacturing plant here, therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

15.     This Court has personal jurisdiction over the Defendants. According to the Defendants' website, there are multiple KIA and Hyundai dealers and service centers located in every state and territory of the United States including New Jersey, Ohio, Massachusetts, Florida, Pennsylvania, Connecticut, Kentucky, New York and Louisiana.   Additionally, KIA Motors America, Corp. maintains one of its regional Market Representation Offices at One Tower Center in East Brunswick, New Jersey. *See http://www.kia.com/#/dealerlocator/dealerResult/zipcode/07017.*   As such, Defendants have conducted substantial business in this judicial district, and intentionally and purposefully place Class vehicles into the stream of commerce within New Jersey and throughout the United States.

## THE PARTIES

16.     Plaintiff Michael Chieco is a resident and citizen of the State of New Jersey, residing in Barnegat, NJ.

17.     Plaintiff April Achord is a resident and citizen of the State of Louisiana, residing Denim Springs, LA.

18.     Plaintiff Jennifer Everett is a resident and citizen of the State of New York, residing Shortsville, NY.

19.     Plaintiff Daniel Reilley is a resident and citizen of the State of Florida, residing in Zephyrhills, Florida.

20.     Plaintiff Terri Sackos  is a resident and citizen of the State of Massachusetts, residing in Townsend, MA.

21.     Plaintiff Joshua Keener is a resident and citizen of the State of Pennsylvania, residing in Backenridge, Pennsylvania.

22.     Plaintiff Kimberle Zimmerman  is a resident and citizen of the State of Ohio residing in Hillsboro Ohio.

23.     Plaintiff  Barbara Myers is a resident and citizen of the State of Ohio residing in Ashley, Ohio.

24.     Plaintiff Donna Hunborg  is a resident and citizen of the State of Kentucky, residing in Louisville, KY

25.     Defendants Kia and Hyundai Motors America, Corp. ("KMC") is a California corporation which is qualified to do, and does, business in the State of California and in this judicial district. Upon information and belief, Defendant KMC can be served through its registered agent for service in California at 111 Peters Canyon Road, Irvine, CA 92606.

26.     Hyundai Motor Company is a South Korean multinational automaker headquartered in Seoul, South Korea. Hyundai was founded in 1967 and it, along with KIA, together comprise the Hyundai Motor Group, which manufactures the 2.0 liter and 2.4 liter engines engine at issue in this complaint.

27.     Upon information and belief, the design, manufacture, modification, installation and decisions regarding the engines for the above stated vehicles within the Class vehicles is exclusively by Defendants Kia and Hyundai.

## FACTUAL ALLEGATIONS

28.     Defendants Kia and Hyundai designed, manufactured, marketed, advertised, warranted, sold and leased the Class vehicles at issue in this case within this district, and throughout the United

States and its Territories, to the Plaintiffs as consumers and members of the Classes.  Defendant Hyundai manufactured the said engine for the Plaintiffs Class vehicles.

29.     The experiences of Plaintiffs and the Class members, mirroring those of hundreds of thousands of other Class vehicle purchasers, reported the engine failure from Defendants mechanical "deburring" process used to remove metallic machining debris from the crankshaft.  The engine is assembled by Defendants with the metal debris in the engine.  Defendants add engine oil to the engine and the metal debris mixes with engine oil and creates excessive thick oil sludge which clogs the lubrication system of the moving parts of the engine and the oil sludge acts as an abrasive in the engine, causing premature wear on the engine moving parts all with the result of the engine seizes up destroying the engine while running and stops operating often overheating and the vehicle catches fire.   The diagnosis of the engine failure revealed metal debris from the engine manufacture process by Defendants which mixes the engine oil and creates oil sludge which inhibits adequate lubrication and abrasion of the the vital moving parts of the internal combustion engine for the class vehicles was reported to their local dealers as well as the National KIA and Hyundai headquarters.  Further, Plaintiffs have also posted messages on the Internet documenting their experiences with the engine failure from oil sludge containing the metal debris, which instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts and which clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the above stated vehicles.  This demonstrates that Defendants' representations to Plaintiffs and Class members were false and misleading regarding, 1) the existence of the manufacture design defect Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine

for the Class vehicles leading to total engine failure and often vehicle fire, 2) that Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure and often vehicle fire, was not covered by the warranty and 3) misleading the Plaintiffs and Class members of the diagnosis and costs of the repair of the engine from Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure and often vehicle fire.

30.     In 1992, KIA Motors America (KMA) was incorporated in the United States. It was created to coordinate Kia's push to enhance the design, development, manufacturing, and marketing of KIA vehicles in North America.   KIA declared bankruptcy in 1997 and in 1998 reached an agreement with Hyundai Motor Company  (HMC) to diversify by exchanging ownership between both companies. Hyundai Motor Company acquired 51% of the company, outbidding Ford Motor Company  which had owned an interest in KIA Motors since 1986.  After subsequent divestments, Hyundai Motor Company owns about one third of KIA Motor Corporation.  Hyundai manufactures the engine for the class vehicle.

31.     In 2009, Defendants' announced their first line of Gasoline Direct Injection (GDI) engines in the United States, the Theta II engines. The Theta II engines consisted of a turbocharged 2.0-liter model and a naturally aspirated 2.4-liter model. HMA used Theta II GDI engines in certain Sonata and Santa Fe SUVs. KIA used Theta II engines in certain Optima, Sorento, and Sportage vehicles.

In 2012, Defendants introduced another GDI engine to its lineup. The 2.0L GDI engine was unveiled as part of Defendants' engine line. That same year, KIA began using the GDI engine, which it eventually added to certain Soul, Forte EX, Sportage, Optima, and Sonata Hybrid vehicles. Hyundai used the GDI engine in certain Elantra and Sonata Hybrid vehicles.   In 2012, Defendants also added GDI engines to their Lambda II engine lineup with a 3.0L GDI engine, a 3.3L GDI engine, and a turbocharged 3.3L GDI engine. Hyundai used the Lambda II GDI engines in certain Genesis and Santa Fe vehicles.

32.     The Class vehicles are equipped with the said Hyundai-manufactured 2.0 liter and 2.4 liter GDI engines which contain metal debris from Defendants mechanical "deburring" process used to remove metallic machining debris from the crankshaft.  The engine is assembled by Defendants with the metal debris.  Oil is added to the engine by Defendants to lubricate the moving parts of the engine including the valves, pistons, crankshaft, bearings, cylinders, rings and other parts of the engine.  The oil mixes with the metal debris left over from the Defendants' defective manufacturing process of the class vehicles creating excessive thick oil sludge.  The thick oil sludge then clogs vital oil ports and the oil circulation system which is supposed to lubricate the said moving parts of the class vehicle engine. The contaminated oil sludge also acts as an abrasive in the engine prematurely wearing out the engine parts.  As a result, the engine seizes up and stops running and many vehicles overheat and catch fire engulfing the entire vehicle.  This causes a severe driving hazard, loss of steering control and power while being driven, hazardous accident potential, and engine failure and vehicle fire. The end result is serious, extensive, and expensive damage to, and/or catastrophic failure of the engine or total loss of the Class vehicles. Collectively, this problem is referred to as the  "metal debris oil sludge problem".

33.     After numerous complaints, the National Highway Traffic Safety Administration began an inquiry with the Defendants.  Hyundai told NHTSA that manufacturing problems left metallic debris around the engine crankshaft that then entered the engine oil. This interfered with the oil flow

through the connecting rod bearings and caused damage to the connecting rods.  The automaker blamed the problem on a mechanical "deburring" process used to remove metallic machining debris from the crankshaft.  As a result of the "metal debris oil sludge problem" the engine fails and stops operating.  Despite the recall, Plaintiffs have not been reimbursed for the expenses regarding the engine replacement, car rental fees, taxi fees, towing fees, loss of credit, and other expenses and are forced to bring this class action against the defendants.

34.     This metal debris oil sludge problem could have been remedied by a relatively simple engine oil flush, new oil and oil filter change, which can be performed as a preventive measure at Defendants' dealerships. This repair would not only save the Plaintiffs and the Class members thousands of dollars in repairs, but would also insure the safety of the general public.   Hyundai identified the problem discussed in this complaint stating:  Technical bulletin 162 – Bearing Wear May Result In Engine Seizure – 2013-2014 Hyundai Sonata & Santa Fe Sport.  Recall 162 Dealer Best Practice Guide 20170623 1 dated June 23, 2017 stated "Hyundai Motor America is conducting a safety recall to inspect, and if necessary, replace the engine assembly in:  All Model Year 2013 and 2014 Hyundai Sonata vehicles equipped with 2.0 liter and 2.4 liter gasoline direct injection (GDI) engines manufactured at Hyundai Motor Manufacturing Alabama (HMMA).   Certain Model Year 2013 and 2014 Hyundai Santa Fe Sport vehicles equipped with 2.0 liter and 2.4 liter gasoline direct injection (GDI) engines manufactured at KIA Motor Manufacturing Georgia (KMMG) and HMMA.   According to the bulletin, it was distributed to Defendants' dealerships general managers, service managers, parts, managers, service advisers, technicians, body shop managers and fleet repair. Upon information and belief, the Technical Service Bulletin was not distributed to the public, nor to owners of the vehicles for the specified two years identified in the technical service bulletin, nor the owners of the Class vehicles.  The bulletin was inadequate and was nothing more than a "band-aid wrapper for a broken arm".  The bulletin's stated "The engines in certain 2013-2014 model year Sonata (YF) and Santa Fe Sport (AN) vehicles equipped with 2.4L and 2.0T GDI

engines may contain residual debris from factory machining operations, potentially restricting oil flow to the main bearings and leading to premature bearing wear. Over time, a bearing may fail and the vehicle could lose power while in motion. Indications of a worn connecting rod bearing include: 1. Knocking noise from the engine, 2. Reduced power and/or hesitation, 3. Illumination of the "Check Engine" warning lamp, 4. Illumination of engine oil pressure warning lamp".  The suggested fix did not address the inherent problem or design and manufacturing flaw of the metal debris and the caustic oil sludge, by checking the oil and looking for debris from a supposed prior maintenance procedure.  Further, the bulletin did not address the Class of vehicles affected by the problem or manufacturing design flaw nor did it disclose Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure and often vehicle fire, which was known by Defendants for several years rather than just the two years stated in the bulletin.  The number and model years for the vehicles affected are greater than what Defendants admit.

35.     Upon information and belief, Defendants' maintenance schedules for the Class vehicles could not have remedied Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure and often vehicle fire.  Many times the damage to the engine was done before the first oil change.  When Plaintiffs would bring their vehicle to the Defendants who complained of the engine problems, the Defendants routinely blamed the Plaintiffs for the excessive oil sludge rather than

14

accepting responsibility for the concealed manufacturing design defects and did not disclose the fact that Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure and often vehicle fire.

36.     Upon information and belief, it is Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure and often vehicle fire.  The result of the concealed manufacturing design defects and failure to disclose the fact Defendants manufacturing process of deburring the crank shaft leaving metal debris which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to loss of control of the vehicle while being driven, loss of power while being driven, hazardous accident potential and  serious and expensive damage to, and/or catastrophic failure of the engine and fire within the Class vehicles.

37.     The internal combustion engine for the above stated vehicles, was designed to function for periods (and mileages) substantially in excess of those specified in Defendants' warranties. Given past experiences with other vehicles, consumers of the Class vehicles legitimately expected to enjoy the use of an automobile for significantly longer than the limited times and mileages identified in

Defendants' warranties, without the worry of Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which acts as an abrasive on engine parts causing premature wear as well as clogging oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles and would self-destruct and/or catch fire.

38.     Upon information and belief, Defendants, through (1) its own records of customer complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA), and other various sources, were well aware of the alarming failure rate of the engine in the class vehicles as a result of Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acting as an abrasive on parts causing premature engine wear for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles and would self-destruct and/or catch fire.

39.     Defendants misled and failed to notify Plaintiff consumers of the nature and extent of the problems of the concealed manufacturing design defects and failure to disclose Defendants manufacturing process of deburring the crank shaft leaving metal debris in the engine which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure and often vehicle fire. Despite such knowledge, KIA and Hyundai continued to manufacture and market the Class vehicles with Defendants manufacturing process of deburring the crank shaft leaving metal debris in the engine which mixes with engine oil, creating oil sludge which, instead of lubricating the engine,

acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles knowing this problem would result in premature engine failure and often vehicle fire.

40.     Members of the Class could not have discovered the latent problems with Defendants manufacturing process of deburring the crank shaft leaving metal debris in the engine which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure and often vehicle fire, through any reasonable inspection of their vehicles prior to purchase.

41.     Defendants were under a duty to Plaintiffs and the Class members to disclose Defendants manufacturing process of deburring the crank shaft leaving metal debris in the engine which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure and often vehicle fire because: (a) Defendants were in a superior position to know the true state of facts about the said metal debris from Defendants manufacturing process  for the above stated vehicles; (b) Plaintiffs and Class members could not reasonably have been expected to learn or discover that the Class vehicles had the said problem until manifestation of the engine failure; (c) Defendants knew that Plaintiffs and Class members could not reasonably have been expected to learn or discover Defendants manufacturing process of deburring the crank shaft leaving metal debris in the engine which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge

clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles and (d) the said problem caused total engine failure, often vehicle fires and major safety problems in driving and operating the vehicle.

42.     The existence of Defendants manufacturing process of deburring the crank shaft leaving metal debris in the engine which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure and often vehicle fire, was within Defendants Hyundai and Kia's exclusive knowledge and control. Defendants misled and actively concealed the material defect or problem from Plaintiffs and the Class members, and Defendants' partial representations about the Class vehicles' quality – made without revealing Defendants manufacturing process of deburring the crank shaft leaving metal debris in the engine which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure and often vehicle fire - gave rise to a duty to disclose.

43.     Defendants expressly warranted the affected vehicles to be free from debris from Defendants manufacturing process of deburring the crank shaft leaving metal debris in the engine which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles leading to total engine failure and often vehicle fire. - with a New Vehicle Limited Warranty consisting of two primary warranty periods: a 5- year/60,000-mile transferable warranty

covering, with some exceptions, all components of the vehicle (the "Basic Warranty"), and a

10-year/100,000-mile non-transferable extended warranty covering the components

Defendants manufacturing process of the engine power train Warranty").

44.     When the internal combustion engine for the above stated vehicles failure occurs near or

after the expiration of the warranty period, Defendants consistently told the Plaintiffs and Class

individuals that the failure is not covered by the warranty.  Defendants then charged Class members

to diagnose and/or repair the class vehicle, when in fact Defendants are aware of the problem and

the technical service bulletins regarding the metal debris/oil sludge problem, and the self-

destruction of the entire engine power-train and often vehicle fire.

45.     When the internal combustion engine for the above stated vehicles failure occurs as a result

of the said oil sludge problem during the warranty period, Defendants disclose neither the above

stated manufacturing metal debris problem nor the existence of the technical service bulletins, in

order to avoid having to provide a no-cost repair and state that the failure is covered by the

warranty.

46.     Defendants collect funds for repairs to the seized engine as a result of Defendants

manufacturing process of deburring the crank shaft leaving metal debris in the engine which mixes

with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on

the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil

ports and oil circulation system which fails to adequately lubricate the vital moving parts of the

internal combustion engine for the Class vehicles leading to total engine failure and often vehicle

fire. In addition, many Class members paid monies to third-party repair shops for services relating

to the diagnosis and/or repair of the seized engine as a result of Defendants manufacturing process

of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil

sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the

vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive

prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem and engine failure. Many Class members also had to purchase rental cars for use while their vehicles were being repaired, continue car payments or worse allowed the worthless vehicle to be repossessed because they could not afford the repairs which should be under Defendants warranty coverage.

47.     Class members who were buyers, lessees, and other owners of the affected class vehicles were without access to the information concealed by Defendants as described herein, and therefore, reasonably relied on Defendants' representations and warranties regarding the quality, durability, and other material characteristics of their vehicles.  Had these buyers and lessees known of Defendants manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the vehicles engine and the engine oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem and the potential danger, they would have taken steps to avoid that danger and/or would not have purchased and financed the class vehicle or would have paid less for their vehicles than the amounts they actually paid.

48.     Defendants' misleading and deceptive marketing and sales practices, including material misrepresentations and omissions regarding Defendants manufacturing process of deburring the crank shaft leaving metal debris in the engine which mixes with engine oil, creating oil sludge which, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine for the Class vehicles, leading to total engine failure and often vehicle fire, were material and substantial and

were made in the form of common misrepresentations of material facts upon which persons, including Plaintiffs and Class members, could be expected to, and did, rely.

49.     As alleged in this Complaint, Defendants' advertisements and representations constitute deceptive and untruthful advertising and marketing regarding the reliability of the Class vehicle and the value of Defendants' warranty of the engine. Defendants' scheme of false and misleading advertising and marketing has resulted in hundreds of thousands of consumers purchasing the Class vehicles, based upon the expectation that the Class vehicles have the qualities that are advertised and will function as represented for the stated warranty periods and beyond.

50.     Defendants' misleading and unfair and deceptive course of conduct is common to all purchasers of the Class vehicles. Each putative Class member was injured by purchasing a defective product at an excessive price because it contained a defective manufacturing design that did not become apparent, within or until shortly after expiration of the warranty period, and the cost to correct the problem was, and is, substantial.

51.     As a result of Defendants'  misleading and unfair, deceptive and/or fraudulent business practices, owners and/or lessees of Class vehicles, including Plaintiffs and Class members, have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm of money and/or property and/or value in costly repairs of the Class vehicles.

52.     Plaintiffs and Class members bring this action to redress Defendants' violations of the New Jersey Deceptive Trade Practices Law 56:8-1, et seq  and Lemon Law 56:12-29, et seq.; Ohio Nonconforming New Motor Vehicles Law 1345.71, et seq.; Ohio Uniform Consumer Sales Practice Act §1345.01-13, Ch. 4165;   Florida Deceptive and Unfair Trace Practices Act §501.203 and Motor Vehicle Warranty Enforcement Act 681.10, et seq; Kentucky Consumer Protection Act 367.220 and Kentucky Lemon Law Revised Statutes Chapter 367;   Pennsylvania Unfair Trade Practices and Consumer Protection Law Title 73 §§201-1 to 9  and Automobile Lemon Law Tit. 73 §§1951, et seq.; New York Consumer Protection From Deceptive Acts and Practices Law (§349-

350-e) and New Car Lemon Law Gen. Bus. §198-a; Connecticut General Statutes Chapter 735a:
Unfair Trade Practices Act  and General Statutes of Connecticut Title 42-179, et seq. ,
Massachusetts Uniform Deceptive Trade Practices Act Ch.93A §21 and Massachusetts General
Laws Chapter 90, section 7N;  Louisiana Revised Statutes 51:1401, et seq.: Unfair Trade Practices
and Consumer Protection Law and Louisiana Revised Statutes 51:1941, et seq.: Motor Vehicle
Warranties and other consumer protection statutes, and seek recovery for Defendants' negligent
misrepresentations, lemon law violations, breach of express warranty, breach of implied warranty,
unjust enrichment, breach of contract, negligence and costs and attorney's fees.

## CLASS ALLEGATIONS

53.     Plaintiffs bring this action pursuant to Federal Rules of  Civil Procedure (FRCP) 23 on
behalf of themselves and all others similarly situated, comprising a class for the causes of action
pled herein consisting of all persons in the United States and its Territories as state sub-class
representatives, who purchased (or received as part of an automobile purchase or lease transaction)
the Class vehicle, including current and former owners and lessees of certain 2011 -14 KIA Optima;
2011 – 14 class vehicles and the 2011 – 13 KIA Sportage, and Hyundai 2013 – 14 Santa Fe and
Sonata; these models use the Hyundai 2.0 liter and 2.4 liter engine.  It is alleged that these engines
fail because of Defendants manufacturing process of deburring the crank shaft leaving metal debris
in the engine which mixes with engine oil, creating oil sludge which, instead of lubricating the
engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, and
excessive oil sludge clogs oil ports and oil circulation system which fails to adequately lubricate the
vital moving parts of the internal combustion engine for the Class vehicles leading to total engine
failure and often vehicle fire, costing the Plaintiffs tens of thousands of dollars in repairs, car
payments for a near worthless non-operable vehicle and often total loss of the vehicle.  This
problem makes the vehicle a hazard to owners and other individuals who may be in harm's way.   It

is proposed there be separate sub-classes consisting of members by each State and its Territories of the United States of America for the State law claims.

54.     There are numerous questions of law or fact common to the members of the Class which predominate over any questions affecting only individual members and which make class certification appropriate in this case, including:

a. whether Defendants KIA and Hyundai, acting individually or collectively with their agents, failed to conduct appropriate, reasonable and adequate testing of the vehicle to determine the durability and longevity of the vehicle and their conformity to the reasonable expectations of consumers in each of individual states of the United States of America and particularly the states of New Jersey, Ohio, Massachusetts, Florida, Kentucky, Pennsylvania, Connecticut, New York, Louisiana and other states;

b. whether Defendants, acting individually or collectively with their agents, failed to warn or otherwise inform Plaintiff and other members of the Class of the premature and abnormal failure of the engine as a result of metal debris leftover from Defendants deburring manufacturing process which debris mixes with engine oil and creates oil sludge which clogs oil ports and prevents vital and necessary lubrication of the engine's moving parts in the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts , to the point that the engine parts seize, which stops engine operation and causes the engine to fail in the stated class vehicles;

c. whether Defendants misled and failed to adequately disclose, and/or affirmatively concealed, in their affirmations and promotional materials, among other things, the premature and/or abnormal engine failure as a result of metal debris leftover from Defendants deburring manufacturing process which debris mixes with engine oil and creates oil sludge which clogs oil ports and prevents vital and necessary lubrication of the engine's

moving parts in the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts , to the point that the engine parts seize, which stops engine operation and causes the engine to fail in the stated class vehicles;

d. whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq., the Uniform Commercial Code and common law; and

e. whether Defendants engaged in unconscionable commercial practices, including the failure to abide by the terms of a written warranty and/or bait and switch tactics, in connection with warranty assertions, interpretations, claims and denials, in violation of the New Jersey Deceptive Trade Practices Law 56:8-1, et seq  and Lemon Law 56:12-29, et seq.; Ohio Nonconforming New Motor Vehicles Law 1345.71, et seq.; Ohio Uniform Consumer Sales Practice Act §1345.01-13, Ch. 4165;   Florida Deceptive and Unfair Trace Practices Act §501.203 and Motor Vehicle Warranty Enforcement Act 681.10, et seq; Kentucky Consumer Protection Act 367.220 and Kentucky Lemon Law Revised Statutes Chapter 367;   Pennsylvania Unfair Trade Practices and Consumer Protection Law Title 73 §§201-1 to 9  and Automobile Lemon Law Tit. 73 §§1951, et seq.; New York Consumer Protection From Deceptive Acts and Practices Law (§349-350-e) and New Car Lemon Law Gen. Bus. §198-a; Connecticut General Statutes Chapter 735a: Unfair Trade Practices Act and General Statutes of Connecticut Title 42-179, et seq. , Massachusetts Uniform Deceptive Trade Practices Act Ch.93A §21 and Massachusetts General Laws Chapter 90, section 7N; Louisiana Revised Statutes 51:1401, et seq.: Unfair Trade Practices and Consumer Protection Law and Louisiana Revised Statutes 51:1941, et seq.: Motor Vehicle Warranties and other consumer protection statutes, and seek recovery for Defendants' negligent misrepresentations, lemon law violations, breach of express warranty, breach of implied warranty, unjust enrichment, breach of contract, and negligence.

55.     The claims asserted by the named Plaintiffs are typical of claims of members of the Class.

56.     This class action satisfies the criteria set forth in FRCP 23(a) and 23(b)(3) in that Plaintiffs are members of the Class and Sub-classes by State and Territory; Plaintiffs will fairly and adequately protect the interests of the members of the Class and Sub-classes; Plaintiffs' interests are coincident with, and not antagonistic to, those of the Class; Plaintiffs have retained attorneys experienced in class and complex litigation; and Plaintiffs have, through their counsel, access to adequate financial resources to assure that the interests of the Class and Sub-class are adequately protected.

57.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

> a. it is economically impractical for most members of the Class to prosecute separate, individual actions; and
>
> b. after the liability of Defendants has been adjudicated, the individual and aggregate claims of all members of the class can be determined readily by the Court.

58.     Litigation of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to the individual Class members which would substantially impair or impede the ability of other Class members to protect their interests.

59.     Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate declaratory and/or injunctive relief with respect to the claims of Plaintiffs and the Class members.

60.     Numerosity: Upon information and belief, each of the Classes is so numerous that joining of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that tens of thousands

of Class vehicles have been sold and leased in the United States of America, and thousands of Class vehicles have been sold or leased in each of the states that are the subject of the State Sub-Classes.

61.     Existence and Predominance of Common Allegations of Fact and Law: Common allegations of law and fact exist as to all members of the Classes. These allegations predominate over the allegations affecting individual Class members. These common legal and factual actions include, but are not limited to:

> a. whether the debris from Defendants manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely; and

> b. whether the debris from Defendants manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely is a manufacturing design defect; and

> c. whether the defective manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class vehicle design is common to all Class vehicles; and

d. whether the debris from Defendants manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles to fail prematurely is common to all Class vehicles; and

e. if so, whether the debris from Defendants manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely; and

f. whether Defendants knowingly failed to disclose the existence and cause of the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem in Class vehicles; and

g. whether Defendants' conduct violates the New Jersey Deceptive Trade Practices Law 56:8-1, et seq  and Lemon Law 56:12-29, et seq.; Ohio Nonconforming New Motor Vehicles Law 1345.71, et seq.; Ohio Uniform Consumer Sales Practice Act §1345.01-13, Ch. 4165; Florida Deceptive and Unfair Trace Practices Act §501.203 and Motor Vehicle Warranty Enforcement Act 681.10, et seq; Kentucky Consumer Protection Act 367.220 and Kentucky Lemon Law Revised Statutes Chapter 367;   Pennsylvania Unfair Trade Practices and

Consumer Protection Law Title 73 §§201-1 to 9  and Automobile Lemon Law Tit. 73 §§1951, et seq.; New York Consumer Protection From Deceptive Acts and Practices Law (§349-350-e) and New Car Lemon Law Gen. Bus. §198-a; Connecticut General Statutes Chapter 735a: Unfair Trade Practices Act  and General Statutes of Connecticut Title 42-179, et seq. , Massachusetts Uniform Deceptive Trade Practices Act Ch.93A §21 and Massachusetts General Laws Chapter 90, section 7N; Louisiana Revised Statutes 51:1401, et seq.: Unfair Trade Practices and Consumer Protection Law and Louisiana Revised Statutes 51:1941, et seq.: Motor Vehicle Warranties and other consumer protection statutes, and seek recovery for Defendants' negligent misrepresentations, lemon law violations, breach of express warranty, breach of implied warranty, unjust enrichment, breach of contract, and negligence; and

h. whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the debris from Defendants manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, members of the Classes have suffered ascertainable loss and is an aggrieved consumer having suffered monetary or other harm of moneys and/or property and/or value; and

i. whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies, and if so the nature of any such relief due to engine failure or total vehicle loss for the above stated vehicles within the Class as a result of the said oil sludge problem; and

j. whether Defendants have been unjustly enriched at the expense of Plaintiffs and Class

members due Defendants consistently denying warranty overage for the class vehicles after

the engines  fail prematurely due to said oil sludge problem; and

k. whether Defendants actions have violated the Fair Credit Reporting Act when Defendants

did not accurately report, as a credit furnisher, that Plaintiffs' debt was forgiven, to credit

reporting agencies.

62.     Typicality: Plaintiffs' claims are typical of the claims of the Classes since they purchased

Class vehicles with a debris from Defendants manufacturing process of deburring the crankshaft

leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports

and oil circulation system which fails to adequately lubricate the vital moving parts of the internal

combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts

for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for

the above stated vehicles.  Furthermore, Plaintiffs and all members of the Classes sustained

monetary and economic injuries including, but not limited to, ascertainable loss and is an aggrieved

consumer having suffered monetary or other harm arising out of Defendants' wrongful conduct.

Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent

Class members.

63.     Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with

the interests of the Classes that they seek to represent, they have retained counsel competent and

highly experienced in complex class action litigation, and they intend to prosecute this action

vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and

their counsel.

64.     Superiority: A class action is superior to all other available means of fair and efficient

adjudication of the claims of Plaintiffs and members of the Classes. The injury suffered by each

individual Class member is small in comparison to the burden and expense of individual

prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims and registration records, and a database of complaints.

65.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

<u>**INDIVIDUAL STATE CLASS REPRESENTATIVES**</u>

66.    Plaintiffs repeat and restate each of the foregoing paragraphs above and they are incorporated herein by reference as though the same were set forth below at length.

**<u>Plaintiff Michael Chieco</u>**

67.    Plaintiff Michael Chieco ("Chieco") is a consumer and purchased a New 2016 class vehicle in or around December 9, 2015 from Manahawkin Kia  located in Manahawkin, New Jersey with "the best warranty in America" and especially the 100,000 mile engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  warranty.

68.    Plaintiff Chieco purchased and still owns this vehicle for personal, family, and/or household uses. Plaintiff Chieco's vehicle bears Vehicle Identification Number ("VIN"):

5XYPKDA58G6087628.

69.     Suddenly on or about  2016, Chieco experienced total engine failure and nearly got into a serious accident when he heard a boom and lost power steering, a flurry of red lights lighting up the dash board.  He muscled the vehicle to the side of the road, avoiding serious injury to herself and other drivers.  The vehicle only had 39,056 miles when failed.  Plaintiff brought his vehicle to and was maintained regularly by the Kia dealership.

67.     Chieco brought his car to the service center and was told his car had excess oil sludge and that his engine had to be replaced. The vehicle required the installation of a new engine power train. He was told it would not be covered under his warranty and that he would have to pay the cost of installing a new engine.   At no time was he told of any KIA technical service bulletin regarding Defendants manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts, requiring the vehicle.

68.     Plaintiff Chieco suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm of his vehicle in the amount of $51,421.10 as a result of Defendants' defective manufacturing design of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely.

69.     Defendants' omissions and/or misrepresentations are directly associated with Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the

Class which causes the class vehicles to fail prematurely for the above stated vehicle including, but not limited to, actual damages for the cost of the repair and diminished value of the vehicle and causes the class vehicles to fail prematurely.

70.     At no time did Defendants or any of its agents, dealers or other representatives inform Plaintiff Chieco of Defendants' omissions and/or misrepresentations related to the Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem and/or defective vehicle design.  Plaintiff Chieco suffered actual damages in having to pay the vehicle repairs and for a replacement vehicle and damage to his credit.

**Plaintiff Jennifer Everett**

71.     Plaintiff, Jennifer Everett ("Everett") is a resident of New York and purchased a 2011 Kia Sorrento with "the best warranty in America" and especially the 100,000 mile engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  warranty.

72.     Plaintiff Everett is a consumer who purchased this vehicle for personal, family, and/or household uses.

73.     Everett strictly followed the maintenance schedule as recommended by the Defendants Kia and Hyundai  pursuant to Defendants' specifications.

74.     In our about 2015 Everett was driving said vehicle when it experienced total engine failure and she nearly got into a serious accident when she heard a boom and lost power steering, a flurry of red lights lighting up the dash board.  She muscled the vehicle to the side of the road, avoiding serious injury to herself and other drivers.  The vehicle only had 11,000 miles on the odometer.

She  took it to a qualified repair shop and the vehicle was diagnosed with a "thrown rod through the engine" as a result of excess oil sludge in the engine.  The oil sludge was created from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts within the Class which caused her engine to fail prematurely.  She was told it would cost $10,000 to repair.  She also was making payments of the car which she could not want to pay as she needed another car to replace the inoperable vehicle.

75.     Plaintiff Everett was told that the repair would not be covered by the warranty. She did not have money to fix the vehicle. It was repossessed and Everett suffered the total loss of her vehicle in the approximate amount of $35,000.00 and severe damage to her credit.

77.     Plaintiff Everett suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in the form of loss of her vehicle and damaged credit as a result of Defendants' misleading her and its omissions and/or misrepresentations associated with the vehicle failure from Defendants manufacturing process, as aforesaid,  which causes the engine to fail prematurely which losses are not limited to, actual damages for the cost of the repair, diminished value of the vehicle and damaged credit.

78.     At no time did Defendants or any of its agents, dealers or other representatives inform Plaintiff Everett of Defendants' omissions and/or misrepresentations related to the Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the engine to fail prematurely for the above stated vehicles problem and/or defective vehicle design.

**Plaintiff April Achord**

79.     Plaintiff April Achord ("Achord") purchased a new 2011 class vehicles in Denim Springs,

Louisiana with "the best warranty in America" and especially the 100,000 mile engine power train,

warranty.

80.     Plaintiff Achord is a consumer who purchased and still owns this vehicle for personal,

family, and/or household uses.

81.     In or about  2015, Plaintiff Achord was driving her vehicle when it experienced total engine

failure and she nearly got into a serious accident when she heard a boom and lost power steering, a

flurry of red lights lighting up the dash board.  She muscled the vehicle to the side of the road,

avoiding serious injury to herself and other drivers.   She  towed it to a qualified repair shop and the

vehicle was diagnosed with a "seized engine" as a result of  excess oil sludge.  This condition was

the direct result of Defendants manufacturing process of the deburring the crankshaft leaving metal

debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil

circulation system which fails to adequately lubricate the vital moving parts of the internal

combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts

for the above stated vehicles within the Class which caused her vehicle to fail prematurely as

described previously in this complaint.  She was told it would cost $10,000 to repair and she also

was making payments of the car which she did not want to pay for an inoperable vehicle.

82      Plaintiff Achord was told that she needed a new engine and that the repair would not be

covered by the warranty.   At no time was she told of any KIA technical service bulletin regarding

Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then

mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which

fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil

sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicle

within the Class which caused her engine to fail.

34

83.     Plaintiff Achord rejected KIA Motors America's offer, which would have left her with over $13,800 in out-of-pocket costs.

84.     Plaintiff Achord has suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm as a result of Defendants' omissions and/or misrepresentations associated with Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely, including, but not limited to, out-of-pocket loss associated with a diagnosis and repair of the seized engine, and the inherently diminished value of the vehicle, out of pocket expense for the repair and severe damage to her credit and of the sales price of the vehicle, and vehicle replacement.

85.     At no time did Defendants or any of its agents, dealers or other representatives inform Plaintiff Achord of Defendants' omissions and/or misrepresentations related to Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem and/or defective vehicle design.  Plaintiff Achord suffered damages for the engine repair and severe damage to her credit and of the sales price of the vehicle, and vehicle replacement.

**Plaintiff Joshua A. Keener**

86.     Joshua A. Keener is a resident of Backenridge, Pennsylvania.  He purchased his 2011 class vehicle New in or about 2011 with "the best warranty in America" and especially the 100,000 mile warranty.

35

87.     In or about  2015, Plaintiff Keener was driving his vehicle when it experienced total engine failure and he nearly got into a serious accident when he heard a boom and lost power steering, a flurry of red lights lighting up the dash board.  He muscled the vehicle to the side of the road, avoiding serious injury to himself and other drivers.   He towed it to a qualified repair shop and the vehicle was diagnosed with a "seized engine" and that the crank shaft failed, and rod bearing failed resulting in rod being driven through bottom of the engine block which created a hole in the bottom of the engine block. This failure caused unrepairable damage to the engine, as well as substantial financial losses for Plaintiff Keener now without transportation for 3 months, all as a result of the Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which caused the vehicle to fail prematurely.  He was told the engine repair was not covered by his warranty and  it would cost $10,000 to replace the engine.  He was also was making payments of the car which he did not want to pay for an inoperable vehicle.

88.   After nearly two months parked at the KIA dealer, Plaintiff Keener finally received the vehicle back.  However, as a result of the substantial delay in the repair, Plaintiff Keener had to rent a vehicle in the approximate cost of $500.00.

89.     Plaintiff Keener has suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm as a result of Defendants' omissions and/or misrepresentations associated with Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the engine fail prematurely, including, but not limited to,

36

out-of-pocket loss associated with a diagnosis and repair of the seized engine, inherently diminished value of the vehicle out of pocket expense for the repair, towing, rentals and severe damage to credit and lost wages in the time it took to repair his vehicle.

90.    At no time did Defendants or any of its agents, dealers or other representatives inform Plaintiff Keener of Defendants' omissions and/or misrepresentations related to Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem and/or defective vehicle design.  Plaintiff Keener suffered damages for the engine repair and severe damage to his credit and for the sales price of the vehicle, and vehicle replacement.

**Plaintiff Daniel Reilley**

91.    Plaintiff Daniel Reilley ("Reilley") is a resident of Zephyrhills, FL.   Reilley purchased a new 2014 class vehicles with "the best warranty in America" and especially the 100,000 mile engine  warranty.

92.    In or about  2015, Plaintiff Reilley was driving his vehicle when it experienced total engine failure and he nearly got into a serious accident when he heard a boom and lost power steering, a flurry of red lights lighting up the dash board.    The vehicle only had 20,000 miles when it failed. He muscled the vehicle to the side of the road, avoiding serious injury to himself and other drivers. He towed it to a qualified repair shop and the vehicle was diagnosed with a "seized engine" and that the rod bearings failed resulting self destruction of the engine.  This failure caused unrepairable damages to the engine, as well as substantial financial losses for Plaintiff Reilley now without transportation for several weeks, all as a result of  Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge

which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which caused the vehicle to fail prematurely for the above stated vehicles as described previously in this complaint. He was told it would cost $10,000 to repair and he also was making payments of the car and he did not want to pay for an inoperable vehicle.

93.   After several weeks parked at the KIA dealer, Plaintiff Reilley finally received the vehicle back.  However, as a result of the substantial delay in the repair, Plaintiff Reilley had to rent a vehicle in the approximate cost of $500.00.

94.   Plaintiff Reilley has suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm as a result of Defendants' omissions and/or misrepresentations associated with Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem, including, but not limited to, out-of-pocket loss associated with a diagnosis and repair of the seized engine inherently diminished value of the vehicle out of pocket expense for the repair, towing, rentals and severe damage to credit and lost employment opportunities as the damaged credit prohibited Plaintiff Reilly from obtaining security clearance for a better paying job.

95.   At no time did Defendants or any of its agents, dealers or other representatives inform Plaintiff Reilley of Defendants' omissions and/or misrepresentations related to Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts

as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem and/or defective vehicle design.  Plaintiff Reilly suffered actual damages in the form of out of pocket expense for the repair, towing, rentals and severe damage to credit and lost employment opportunities as the damaged credit prohibited Plaintiff Reilly from obtaining security clearance for a better paying job.

Plaintiff Donna Hunberg

96.     Donna Hunberg is a resident of Louisville, KY.  In or about  2013 Hunberg purchased a used 2011 class vehicle with "the best warranty in America".

97.     On 5-1-18 at about 7pm while driving in the passing lane, Hunberg noticed that the engine started making a noise, and she lost engine power.  She was able to make it through traffic to shoulder of expressway.  She discovered that the engine had seized up and ceased operation. She could not to restart the engine. She had it towed to the Kia dealership. After they looked at it she was told that the bottom half of the motor was locking up for "reasons unknown to them".  She was then given an oral estimate of $7,500 to $10,000 to replace the engine and that the repair was not covered by her warranty.

98.     At no time was Hunberg told about any recall or technical bulletin or about Defendants' manufacturing failure which causes unrepairable damage to the motor of the car, as well as substantial financial losses for Plaintiff Hunberg  now without transportation for several weeks, all as a result of  Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which caused her vehicle to fail prematurely for the above stated vehicles as described previously in this complaint.

99.    Plaintiff Hunberg suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm as a result of Defendants' omissions and/or misrepresentations associated with Defendants' manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem, including, but not limited to, out-of-pocket loss associated with a diagnosis and repair of the seized engine inherently diminished value of the vehicle out of pocket expense for the repair, towing, rentals and severe damage to credit.

100.    At no time did Defendants or any of its agents, dealers or other representatives inform Plaintiff Hunberg of Defendants' omissions and/or misrepresentations related to Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem and/or defective vehicle design.  Plaintiff Hub\nberg suffered atual damages in the form of out-of-pocket loss associated with a diagnosis and repair of the seized engine inherently diminished value of the vehicle out of pocket expense for the repair, towing, rentals and severe damage to credit.

**Plaintiff Barbara Myers**

101.    Barbara Myers is a resident of Ashley, Ohio.

102.    She purchased a  2012, class vehicles on June 30, 2018 with "the best warranty in America" and especially the 100,000 mile engine power train warranty.   At that time she was advised of the engine recall but the Kia dealership sold her the car anyway without replacing the engine.  The Kia

dealership made it seem like it was very minor. The next day she brought the car back to get new tires.   No mention was made regarding the engine recall.   On August 1, 2018 she went over to KIA to have the recall check up done, after this check up Kia was supposed to give her a print out saying whether the car passed or failed the test. She never received this print out when she picked up the car on August 2, 2018 and the dealership never advised her that her car was recalled or what work, if any,  was performed on the vehicle pursuant to the recall.   On August 11, 2018 she switched cars for the day with her mother.  When her mother was driving the Kia, it suddenly stalled.  She heard a loud noise, the check engine light came on, and she noticed smoke. She pulled the car over, got out of the Kia. Approximately five minutes later the whole car burst into flames. The Kia,  with all her belongings in the car, were destroyed.   The dealership received a video of the fire but Plaintiff never received a response. After repeated calls the dealer offered to wipe out financing loan, and find another car at the same price with the same monthly payments. Kia admitted that the fire was due to a "thrown rod" in the engine.

103.  Plaintiff Meyers suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm as a result of Defendants' omissions and/or misrepresentations associated with Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem, including, but not limited to, out-of-pocket loss associated with a diagnosis and repair of the seized engine from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts

41

for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, and the inherently diminished value of the vehicle, out of pocket expense for total loss of the vehicle, her belongings, towing, rentals and severe damage to credit.

104.    At no time did Defendants or any of its agents, dealers or other representatives inform Plaintiff Myers of Defendants' omissions and/or misrepresentations related to Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem and/or defective vehicle design.  Plaintiff Meyers suffered actual damages, out-of-pocket loss associated with a diagnosis and repair of the seized engine, rentals, damaged credit and the sales price of the class vehicle and all costs associated therewith.

Plaintiff Kimberle Zimmerman,

105.  Plaintiff Kimberle Zimmerman, is a resident of Hillsboro Ohio, 45133.

106.   In 2011, Zimmerman purchased a new class vehicle with "the best warranty in America" and especially the 100,000 mile engine power train warranty.

107.    While driving her new car, she  noticed that the engine started making a noise, and she lost engine power.  She was able to make it through traffic.  She discovered that the engine had seized up and ceased operation. She could not to restart the engine. She had it towed to the Kia dealership. At the time of failure, the car had 14k miles on it.  After the Kia dealership looked at it she was told that the bottom half of the motor was locking up for "reasons unknown to them".  She was then given an oral estimate of $7,500 to $10,000 to replace the engine.  She was also told the repairs were not covered by her warranty.

108.    At no time was Zimmerman told about any recall or technical bulletin or about Defendants manufacturing failure which caused unrepairable damage to her vehicle's engine.  Plaintiff Zimmerman suffered  substantial financial losses for Plaintiff Zimmerman  now without transportation for several weeks, all as a result of the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which caused her vehicle to fail prematurely as described previously in this complaint.

109.    Plaintiff Zimmerman suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm as a result of Defendants' omissions and/or misrepresentations associated with Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem, including, but not limited to, out-of-pocket loss associated with a diagnosis and repair of the seized engine inherently diminished value of the vehicle, out of pocket expense for the repair, towing, rentals and severe damage to credit.

110.    At no time did Defendants or any of its agents, dealers or other representatives inform Plaintiff Zimmerman of Defendants' omissions and/or misrepresentations related to Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the

Class which causes the class vehicles to fail prematurely for the above stated vehicles problem and/or defective vehicle design.   Plaintiff Zimmerman suffered actual damages, out-of-pocket loss associated with a diagnosis and repair of the seized engine, rentals, damaged credit and the sales price of the class vehicle and all costs associated therewith.

Plaintiff Terri Sackos

111.   Plaintiff Terri Sackos is a resident of Townsend, MA

112.   In 2012, Plainitff Sackos purchased a new 2012 class vehicles with "the best warranty in America" and especially the 100,000 mile engine power train warranty.

113.   On August 7, 2014 Plaintiff Sackos was driving her class vehicle when she suddenly heard a knocking sound.   No lights were illuminated on the dashboard.   The gauges did not indicate that the car was running hot, sluggish,  and there was no black smoke, no leaks, nothing.   She started to get off the highway and the check engine light suddenly came on and the car stalled at end of the ramp. The vehicle would start,  but stall at idle. Plaintiff Sackos called Peters Kia service dept. and she was told to get off highway and have the car towed to the dealer.   Plaintiff Sackos then called Joe at the Kia Service department to find out what happened to the car.   Plaintiff Sackos was informed "you need engine work".  Multiple phone calls went back and forth between her and the Kia service department. On August 12, 2014 Mike Flaherty of Kia called and said that a Kia representative came out to check out her car and said he couldn't determine anything on my car because they "needed the gasket covers, etc. to be removed and that that was not covered under the warranty and would cost" her approximately $261.00.   She told him she was not paying to have them "remove the gasket covers, etc," and that they should have known this needed to be done before the representative was out and not only wasted the representatives time but a weeks worth of time of possibly having the car fixed. Plaintiff Sackos didn't hear back from Mike until August 19, 2014. Mike called to say that Kia Corp looked at her car and determined that they would not cover the repair under the warranty saying the car was neglected and she didn't provide sufficient evidence of

the oil changes.  She informed Mike that that was completely untrue.   Oil was just changed in March 2014.  She called  Kia directly and was told to take the car elsewhere because the mechanics at their dealership "are incompetent."   After a lot of back and forth Kia refused to repair the car under the vehicle warranty.

114.    At no time was Sackos told about any recall or technical bulletin regarding the manufacture defect.    The manufacture defect failure caused unrepairable damages to the Plaintiff's engine of the car, as well as substantial financial losses for Plaintiff Sackos  now without transportation for several weeks, all as a result of Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which caused her vehicle to fail prematurely for the above stated vehicles as described previously in this complaint.

115.    Plaintiff Sackos suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm as a result of Defendants' omissions and/or misrepresentations regarding Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely, including, but not limited to, out-of-pocket loss associated with a diagnosis and repair of the seized engine, and the inherently diminished value of the vehicle out of pocket expense for the repair, towing, rentals and severe damage to credit.

116.    At no time did Defendants or any of its agents, dealers or other representatives inform Plaintiff Sackos of Defendants' omissions and/or misrepresentations related to the debris from

Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely.   Plaintiff Sackos suffered actual damages, out-of-pocket loss associated with a diagnosis and repair of the seized engine, rentals, damaged credit and the sales price of the class vehicle and all costs associated therewith.

Plaintiff Ken Ferner

117.    Plaintiff Ken Ferner resides in  Glasstonbury CT.  Plaintiff Ferner purchased a new 2013 class vehicles with "the best warranty in America" and especially the 100,000 mile engine power train warranty.

118.    While driving his new car, he noticed that the engine started making a noise, and he lost engine power.  He was able to make it through traffic to shoulder of expressway.  He discovered that the engine had seized up and ceased operation. He could not to restart the engine. He had it towed to the Kia dealership. At the time of failure, the car had 53,000 miles on it.  After the Kia dealership looked at it he was told that the bottom half of the motor was locking up for "reasons unknown to them".  He was then given an oral estimate of $7,500 to $10,000 to replace the engine. He was also told that he warranty would not cover the cost of the repair.

119.    At no time was Ferner told about any recall or technical bulletin.  Plaintiff Ferner without transportation for several weeks, all as a result of  Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which caused the vehicle to fail prematurely as described previously in this complaint.

46

120.    Plaintiff Ferner suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm as a result of Defendants' omissions and/or misrepresentations associated with Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem, including, but not limited to, out-of-pocket loss associated with a diagnosis and repair of the seized engine inherently diminished value of the vehicle, rental costs, damaged credit and loss of work in dealing with the repairs.

121.    At no time did Defendants or any of its agents, dealers or other representatives inform Plaintiff Ferner of Defendants' omissions and/or misrepresentations related to Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles problem and/or defective vehicle design. Plaintiff Ferner suffered actual damages, out-of-pocket loss associated with a diagnosis and repair of the seized engine, rentals, damaged credit and the sales price of the class vehicle and all costs associated therewith.

## TOLLING OF STATUTES OF LIMITATIONS

122.    Any applicable statute/s of limitations are tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Classes could not have reasonably discovered the true, latent, and widespread defective nature of the Class vehicles and the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal

debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles before this class action litigation was commenced.

123.    Defendants were and remain under a continuing duty to disclose to Plaintiffs and members of the Classes: the true character, quality and nature of the Class vehicles suffering from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil, creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicle and the engine then to fail prematurely; and it will inevitably require costly repairs to fix in or shortly after the warranty period expires (but well before the end of the useful life of the vehicle); and that this diminishes the resale value of the Class vehicles. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

### CLAIMS ALLEGED
### COUNT I
### BREACH OF EXPRESS WARRANTY AGAINST DEFENDANTS
### (On Behalf of each of the State Sub-Classes)

124.    Plaintiffs and the Classes repeat and incorporate herein by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

125.    Defendants Kia and Hyundai expressly warranted that the Class vehicles were of high quality, free of design defects and, at a minimum, would actually function properly.   The class vehicles have a New Vehicle Limited Warranty consisting of two primary warranty periods:  a 5-year/60,000-mile transferable warranty covering, with some exceptions, all components of the

48

vehicle (the "Basic Warranty"), and a 10-year/100,000-mile non-transferable extended warranty on the engine (hereinafter the "Warranty") .   Any repair of the engine during the warranty period for the above stated vehicles is covered under the Warranty.

126.     Defendants Kia and Hyundai breached these warranty(ies) by not honoring the warranty that Plaintiffs' Class vehicles were still under. Plaintiffs Michael A. Chieco, April Achord, Jennifer Everett, Ken Ferner, Terri Sackos, Kimberle Zimmerman, Donna Hunberg, Daniel Reilley, and Joshua Keener and other Class members were the Original Owners of their respective Class vehicles, as per the definition found in Defendants KIA and Hyundai  "Warranty and Consumer Information Manual", meaning they were entitled to both the Basic Warranty and limited Warranty. At the time of engine failure Plaintiffs' Class Vehicles were still under Defendants' Warranties, yet Defendants' dealerships routinely refused to honor the claims of the Plaintiffs pursuant to their warranties and representations and each Plaintiff would have to pay for costly repairs themselves.

127.     Defendants KIA and Hyundai breached the warranties by not making the repairs as required and instead charging Plaintiffs for the repairs.   The Class vehicles contained the known defect from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, and which would inevitably and prematurely fail well before the expiration of their useful life, causing catastrophic self-destruction to the engine and creating a serious driving hazard.

128.     Defendants' breach of the warranty caused ascertainable damages to Plaintiffs and Class members in the form of costly repairs, towing, rentals, lost employment, damaged credit and loss of the entire vehicle due to vehicle fire.

129.    Defendants' attempt to disclaim or limit these express warranties vis-à-vis the Plaintiffs as consumers, is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product as a result of Defendants manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, and which would inevitably and prematurely fail well before the expiration of their useful life, causing catastrophic self-destruction to the Class vehicle engine and creating a serious driving hazard, costly repairs and fire potential without informing consumers about the problem.

130.    The time and mileage limitations contained in Defendants' warranty period were also unconscionable and inadequate to protect the Plaintiffs and members of the Classes. Among other things, the Plaintiffs and members of the Classes had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants KIA and Hyundai and Class members, and KIA knew or should have known that the Class vehicles were defective at the time of sale and would fail well before their useful lives.

131. Defendants concealed material information of  Defendants manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which would inevitably and prematurely cause the engines to fail well before the expiration of their useful life, causing catastrophic self-destruction to the Class vehicle engine and creating a serious driving hazard, costly

50

repairs and fire potential without informing consumers about the problem. Defendants acted intentionally with the purpose of maximizing their own profit.

132. Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described above. In addition, Defendants were put on notice of the problem because they had actual knowledge of the existence of this defect at all relevant times. Defendants each failed to honor the express warranties by repairing the class vehicles.

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court grant judgment against Defendants KIA and Hyundai as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as representatives of the Classes and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

## COUNT II
## BREACH OF THE IMPLIED
## WARRANTY OF MERCHANTABILITY
## (On Behalf of each of the State Sub-Classes)

133.    Plaintiffs and the Class members repeat and incorporate herein by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

134.    Defendants Kia and Hyundai impliedly warranted that the Class vehicles were of a merchantable quality and breached the implied warranty of merchantability, as the Class vehicles were not of a merchantable quality due to the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles engines to fail prematurely.

135. As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members were injured, and are entitled to damages.

136. Defendants Kia and Hyundai's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis Plaintiff consumers, is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable here because they knowingly sold a defective product without informing consumers about the said oil sludge problem.

137.   The time and mileage limitations contained in Defendants' warranty period are also unconscionable and inadequate to protect Plaintiffs and members of the Classes.  Among other things, Plaintiffs and members of the Classes had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants Kia and Hyundai A gross disparity in bargaining power existed between KIA and Class members, and KIA knew or should have known that the Class vehicles were defective at the time of sale and would fail well before normal use of the vehicle.

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court grant judgment against Defendants as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as representatives of the Classes and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

## COUNT III
### Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)
### (On Behalf of each of the State Sub-Classes)

138.    Each and every one of the preceding paragraphs are incorporated herein by reference as though the same were set forth herein at length.

139.    Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.

(the "Act") in 1975 in response to widespread complaints from consumers that many warranties were misleading and deceptive, and were not being honored. To remedy this problem of deception and failure to honor warranties, the Act imposed civil liability on any "warrantor" for, inter alia, failing to comply with any obligation under a written warranty and/or implied warranty [see 15 U.S.C. § 2310(d)(1)]. The Act authorizes a "suit for damages and other legal and equitable relief." Id. The Act authorizes the award of attorneys' fees (id.), and expressly authorizes class actions [15 U.S.C. § 2310(e)].

140.    Defendants Kia and Hyundai are each a "warrantor[s]" within the meaning of Section 2301(5) of the Act. Plaintiffs and other members of the Class are "consumers" within the meaning of Section 2301(3) of the Act.

141.    As set forth in the paragraphs below, the allegations of which are incorporated herein by reference, Defendants Kia and Hyundai expressly warranted the engines in the above stated vehicles. The Defendants' warranty is a "written warranty" within the meaning of Section 2301(6) of the Act and the Uniform Commercial Code. Defendants Kia and Hyundai breached its express warranties in the manner described above and below.

142.    Defendants Kia and Hyundai impliedly warranted the class vehicles as being merchantable and fit for a particular purpose, which warranties are implied warranties within the meaning of Section 2301(7) of the Act, and Sections 2-314 and 2-315 of the Uniform Commercial Code. Defendants breached these implied warranties in the manner described above and below. Any limitation period, limitation on recovery or exclusions of implied warranties are unconscionable within the meaning of Section 2-302 of the Uniform Commercial Code and, therefore, are unenforceable, in that, among other things, Plaintiffs and members of the Class lacked a meaningful choice with respect to the terms of the written warranties due to unequal bargaining power and a lack of warranty competition.

143.    Defendants' knowledge of the fact that their vehicle for the said model years would incur premature and/or abnormal wear and tear and failure and fire hazard has given Defendants more than adequate opportunity to cure the problem, an opportunity which they have not taken to date.

144.    Plaintiffs and other members of the Class has ascertainable damages by Defendants' failure to comply with their obligations under the applicable express and implied warranties. As a direct and proximate cause of Defendants' breaches of express and implied warranties, Plaintiffs and other Class members have suffered actual ascertainable economic damages and have been threatened with irreparable harm.

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court grant judgment against Defendants as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as representatives of the Classes and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

### COUNT IV
### DECLARATORY RELIEF
### (On Behalf of each of the State Sub-Classes)

145. Each and every paragraph above is incorporated herein by reference as though the same were fully set forth here at length.

146. This claim is asserted on behalf of Plaintiff and other Class members in accordance with the Declaratory Judgment Act pursuant to 28 USC § 2201 and as an additional equitable remedy.

147. Plaintiff and other Class members are entitled to a declaration that Defendants Kia and Hyundai conduct described herein constitutes violations of applicable statutory and common law. The declaratory relief requested includes an order declaring Defendants' conduct, as alleged herein, to be unlawful, and requiring Defendants to compensate Plaintiffs and other Class members in the

manner described herein and to supply Class members with replacement vehicles having ordinary life expectancy without the design defect as alleged herein.

WHEREFORE,  Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court grant judgment against Defendants as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as representatives of the Classes and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

### COUNT V
### NEGLIGENCE
### (On Behalf of each of the State Sub-Classes)

148.    The allegations contained in the foregoing paragraphs in this pleading are incorporated as if fully rewritten herein, except if the matter would be inconsistent with the cause of action stated in this Count.

149.    Each Defendant owed to Plaintiffs and Class Members for all sub-classes an independent duty imposed by law in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 and each Defendant breached a duty of care so that the Plaintiffs suffered legally cognizable harm. Brunson v. Affinity Federal Credit Union, 954 A.2d 550, 560 (N.J.Super.Ct. App. Div. 2008).

150.    Each of the Defendants' negligent conduct of Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely caused harm to Plaintiffs or their property resulting in costly repairs, loss of credit, towing and rental charges and damage to credit.

151.    In this alternate cause of action, Defendants' respective duties did not entirely emanate from contractual relationships.

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court grant judgment against KIA and Hyundai as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as representatives of the Classes and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

**COUNT VI**
**BREACH OF CONTRACT**
**(On Behalf of each of the State Sub-Classes)**

152.    Plaintiffs and Class Members for all sub-classes repeat and incorporate each and every matter contained above as fully stated herein except if the matter would be inconsistent with the cause of action stated in this Count.

153.    Defendants and Plaintiffs and Class Members for all sub-classes entered into a binding agreement for valuable consideration that Defendants would repair the engine and debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  at no cost of all vehicles within the class of Plaintiffs and Class Members for all sub-classes.

154.    Instead, when the engines failed as a result of the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles failure, Defendants breached their agreement to repair the class vehicles of the Plaintiffs.

155.    As stated above in this separate cause of action there was (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot 507 F3d 188, 203 (3d Cir. 2007).

WHEREFORE, Plaintiffs and Class Members for all sub-classes, respectfully request that this Court grant judgment against Defendants as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as representatives of the Classes and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

## COUNT VII
## COMMON LAW FRAUD
### (On Behalf of each of the State Sub-Classes)

156.    Plaintiffs repeat and incorporate each and every matter contained above as fully stated herein except if the matter would be inconsistent with the cause of action stated in this Count.

157.    Plaintiffs and Class Members for all sub-classes purchased and/or leased Class vehicles for personal, family or household use.

158.    Defendants Kia and Hyundai engaged in unlawful conduct, made affirmative misrepresentations, constituting common law fraud and/or misrepresentations of fact, misled and made willful mistake, malice, intent, knowledge, and other conditions by Defendants Kia and Hyundai which created in the Plaintiffs and Class Members for all sub-classes' mind, as specifically alleged above, is that Kia and Hyundai represented to the Plaintiffs and Class Members for all sub-classes that it had the best warranty for its vehicles and that Kia and Hyundai would stand behind its warranty.  Kia and Hyundai also represented that the engine would last more than 100,000 miles even with knowledge of Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil

circulation system which fails to adequately lubricate the vital moving parts of the internal

combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts

for the above stated vehicles within the Class which causes the class vehicles to fail prematurely.

Specifically, Defendants KIA and Hyundai each had knowledge and were each aware that the Class

vehicles suffered a common problem regarding the debris from Defendants manufacturing process

of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil

sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the

vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive

prematurely wearing out vital engine parts for the above stated vehicles within the Class which

causes the class vehicles to fail prematurely for the above stated vehicles seizing, but failed to

disclose this to Plaintiffs and Class Members for all sub-classes.   Kia and Hyundai specifically

instructed their service technicians to deny the presence of the metal debris and the excessive oil

sludge at each specific incident when Plaintiffs would bring their vehicle to Defendants for service.

Kia and Hyundai also marketed these vehicles as being of superior quality when KIA had actual

knowledge that the Class vehicles contained a known problem of the said metal debris and resulting

excessive oil sludge clogging the oil ports and failing to adequately lubricate the engine of the class

vehicles leading to total engine failure and often vehicle fires. The failure to disclose the defect and

the affirmative misrepresentations of the quality of the class vehicles by Defendants were material

to the vehicle purchases, and were false statements of fact by Defendants  Plaintiffs and Class

Members for all sub-classes relied upon Defendants' representations regarding the reliability of the

Class vehicles and that if the vehicle would fail, then Defendants represented it would remedy the

vehicle malfunction through its warranty(ies) on the Class vehicles.  Defendants knew its

representations were false regarding the reliability and integrity of the engine containing the said

metal debris, and the oil sludge,  failing to lubricate the engine and instead of lubricating the engine,

acts as an abrasive on the moving engine parts prematurely wearing out those parts leading to total

engine failure and often vehicle fire.  Defendants knew that the Plaintiffs and Class Members for all sub-classes relied on its representations regarding the reliability and integrity of its warranty in purchasing their vehicle in the first place and the of the vehicle and warranty even though Defendants had actual knowledge of the debris Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles of Plaintiffs and Class Members for all sub-classes detriment.  Plaintiffs and Class Members for all sub-classes suffered damages when Defendants would not honor its warranty when the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles engine to fail prematurely, which required the payment of a substantial expense by Class Plaintiffs for repairs, towing, rentals, damage to credit or total vehicle replacement.

214.    Defendants Kia and Hyundai also committed common law fraud by making knowing and intentional omissions of the design defect from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles in the Class vehicles in order to secure the sale of these vehicles, and to offer them at a premium price or costly repairs suddenly outside the warranty.

215.    Defendants Kia and Hyundai did not fully and truthfully disclose to Plaintiffs and Class Members for all sub-classes the true nature of the problem with the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles engines to fail prematurely for the above stated vehicles, which was not readily discoverable by customers until years later.  As a result, Plaintiffs and Class Members for all sub-classes were fraudulently induced to lease and/or purchase the Class vehicles with the said design defects and all of the resultant problems that occur when the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles engine to fail prematurely and engine parts seizing, and self destruction of the engine.  These facts that Defendants KIA and Hyundai concealed were solely within their possession.  Further, when Plaintiffs and Class Members for all sub-classes did purchase their vehicle and bring said vehicle to a Defendants KIA and Hyundai authorized dealer for service, each Defendants KIA and Hyundai dealership misrepresented the fact that the problem was not covered under the warranty, misrepresented the fact that there was a technical service bulletin regarding the problem, and misrepresented the fact that the vehicle needed extensive and expensive repairs and the Plaintiffs expense.

216.    Defendants KIA and Hyundai intended that Plaintiffs and Class Members for all sub-classes rely on the misrepresentations stated above as well as the acts of concealment of the problem with the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal

debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles and omissions in disclosing the problem with the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles design, to the Plaintiffs' and the Class members' detriment in either purchasing the defective the class vehicles or in the repair and service of the Class vehicles.

217.    Defendants KIA and Hyundai's conduct caused Plaintiffs and Class Members for all sub-classes to suffer an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in the form of increased initial purchase price for the defective vehicle and then costly repairs to their vehicles when the problem manifested itself and caused failure.  In addition to direct monetary losses, Plaintiffs and Class Members for all sub-classes have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm by total loss of the vehicle because the repair costs more than what the vehicle is worth.  Further, Plaintiffs and Class Members for all sub-classes have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in that the vehicle is unusable as a vehicle and its only value is its weight in scrap metal and useless plastic.

218.    A causal relationship exists between Defendants Kia and Hyundai, as seller, warrantor and manufacturer of the Plaintiffs and Class Members for all sub-classes and the Class vehicle and for its unlawful conduct and the ascertainable losses suffered by Plaintiffs and Class Members for all

sub-classes as purchasers of the Class vehicles. Had the defective design in the Class vehicles been disclosed, Plaintiffs and Class Members for all sub-classes either would not have purchased the Class vehicle or would have paid less for the Class vehicle.

WHEREFORE, Plaintiffs and Class Members for all sub-classes, respectfully request that this Court grant judgment against Defendants Kia and Hyundai Hyundai as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as the respective state representative of the Classes and his counsel as Class counsel;

C. award all actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief against Defendants Kia and Hyundai;

E. grant appropriate injunctive and/or declaratory relief, Including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

### COUNT VIII
### <u>VIOLATION OF THE NJCFA</u>
### <u>(On Behalf of the New Jersey Class)</u>

219.    Plaintiffs Chieco, and other New Jersey Class Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

210.    The New Jersey Consumer Fraud Act ("NJCFA") protects New Jersey consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise,

misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…" N.J.S.A. 56:8-2.  New Jersey Deceptive Trade Practices Law 56:8-1, et seq    As a result of the aforesaid known problem the  class vehicle was a "lemon" pursuant to New Jersey Lemon Law 56:12-29, et seq.

211.    Plaintiffs Chieco, and other New Jersey Class Plaintiffs purchased and/or leased as a consumer Class vehicles for personal, family or household use.

212.    Defendants KIA and Hyundai engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the NJCFA. The specific circumstances constituting fraud or mistake, malice, intent, knowledge, and other conditions by Defendants KIA and Hyundai was when they created in the Plaintiffs Chieco, and other New Jersey Class Plaintiffs' minds, Defendants KIA and Hyundai, had the best warranty for its vehicles and that Defendants would stand behind its warranty.   Defendants misrepresented the condition of its engines and also failed to disclose the known engine debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  in the Class vehicles suffered a common design defect regarding the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles engine to fail prematurely for the above stated vehicles seizing and often catching on fire, but failed to disclose any of this to Plaintiffs Chieco, and other New Jersey Class Plaintiffs. Instead, each time Plaintiff would come to Defendants service center, the Defendants would blame the excessive oil sludge on Plaintiffs and would not disclose the metal debris in the engine.

Defendants also marketed these vehicles as being of superior quality when Defendants had actual knowledge that the Class vehicles contained the metal debris known problem. These affirmative misrepresentations by Defendants were material to the vehicle purchases, and were false statements of fact by Defendants,  Plaintiffs Chieco, and other New Jersey Class Plaintiffs relied upon Defendants KIA and Hyundai representations regarding the reliability of the Class vehicles and that if the vehicle would fail, then Defendants KIA and Hyundai represented it would remedy the vehicle malfunction through its warranty on the Class vehicles.  Defendants KIA and Hyundai knew its representations were false regarding the reliability and integrity of the and resulting oil sludge clogging engine and of its engine debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts .

213.    Defendants knew that the Plaintiffs Chieco, and other New Jersey Class Plaintiffs relied on its representations regarding the reliability and integrity of its warranty in purchasing the vehicle in the first place and the of the vehicle and warranty even though Defendants had actual knowledge of the debris Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  and and resulting oil sludge clogging engine and of its engine debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  to the Plaintiffs Chieco, and other New Jersey Class Plaintiffs detriment.  Plaintiffs Chieco, and other New Jersey Class Plaintiffs suffered damages when Defendants would not honor its warranty when the and resulting oil sludge clogging engine causing the engine to seize up creating total engine failure and often creating the vehicle to catch fire Class vehicles, the destruction of the engine debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an

abrasive on the moving engine parts prematurely wearing out those parts , which required the payment of a substantial expense by Class Plaintiffs for repairs.

214.    Defendants KIA and Hyundai also engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions of the design defect and repair of the and resulting oil sludge clogging engine in the Class vehicles in order to secure the sale of these vehicles, and to offer them at a premium price or costly repairs suddenly outside the warranty.

215.    Defendants KIA and Hyundai did not fully and truthfully disclose to Plaintiffs Chieco, and other New Jersey Class Plaintiffs the true nature of the inherent design defect with the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, which was not readily discoverable by customers until years later.  As a result, Plaintiffs Chieco, and other New Jersey Class Plaintiffs were fraudulently induced to lease and/or purchase the Class vehicles with the said design defects and all of the resultant problems that occur when the engine seizing, and self destruction of the engine.  These facts that Defendants KIA and Hyundai concealed were solely within their possession.  Further, when Plaintiffs Chieco, and other New Jersey Class Plaintiffs did purchase their vehicle and bring said vehicle to a Defendants authorized dealer for service, each Defendants dealership misrepresented the fact that the problem was not covered under the warranty, misrepresented the fact that there was a technical bulletin regarding the problem, and misrepresented the fact that the vehicle needed extensive and expensive repairs.

216.    Defendants KIA and Hyundai intended that Plaintiffs Chieco, and other New Jersey Class Plaintiffs rely on the misrepresentations stated above as well as the acts of concealment of the design defect of the metal debris from the manufacturing defect and omissions in disclosing the

problem of the metal debris from the manufacturing defect, to the Plaintiffs' and the Class members' detriment in either purchasing the defective the class vehicles or in the repair and service of the Class vehicles.

217.    Defendants KIA and Hyundai conduct caused Plaintiffs Chieco, and other New Jersey Class Plaintiffs to suffer an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in the form of increased initial purchase price for the defective vehicle and then costly repairs to their vehicles when the problem manifested itself and caused failure.  In addition to direct monetary losses, Plaintiffs Chieco, and other New Jersey Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm by total loss of the vehicle because the repair costs more than what the vehicle is worth.  Further, Plaintiffs Chieco, and other New Jersey Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in that the vehicle is unusable as a vehicle and its only value is its weight in scrap metal and useless plastic.

218.    A causal relationship exists between Defendants Kia and Hyundai, as seller, warrantor and manufacturer of the Plaintiffs Chieco, and other New Jersey Class Plaintiffs and the Class vehicle and for its unlawful conduct and the ascertainable losses suffered by Plaintiffs Chieco, Achord and other New Jersey Class Plaintiffs as purchasers of the Class vehicles. Had the defective design in the Class vehicles been disclosed, Plaintiffs Chieco, and other New Jersey Class Plaintiffs either would not have purchased the Plaintiffs and the Class vehicle or would have paid less for the Plaintiffs Chieco, and other New Jersey Class Plaintiffs and the Class vehicles.

WHEREFORE, Plaintiffs Chieco, and other New Jersey Class Plaintiffs, respectfully request that this Court grant judgment against Defendants Kia and Hyundai as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs Chieco, as New Jersey representatives of the Classes and their counsel as Class counsel;

C. award all actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief against Defendants Kia and Hyundai;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

**COUNT IX**
**VIOLATION OF THE Ohio CSPA**
**(On Behalf of the Ohio Class)**

219.    Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

220.    The Ohio Consumer Sales Practice Act ("CSPA") states that "No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction" Ohio Revised Code, Title 13, Chapter 1345.03(A).

221.    Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs purchased and/or leased as a consumer Class vehicles for personal, family or household use.

222.    Defendants KIA and Hyundai engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the Ohio CSPA. The circumstances constituting fraud or mistake, malice, intent, knowledge, and other conditions by Defendants Kia and Hyundai created in

the Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs' mind, alleged generally, is that Defendants represented to the Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs that it had the best warranty for its vehicles and that Defendants would stand behind its warranty. Specifically, Defendants KIA and Hyundai each had actual knowledge and were each aware that the Class vehicles suffered a common design defect regarding the metal debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely and may catch fire for the above stated vehicles seizing, but failed to disclose this to Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs. Defendants Kia and Hyundai also marketed these vehicles as being of superior quality when Defendants had actual knowledge that the Class vehicles contained said known problem. These affirmative misrepresentations by Defendants were material to the vehicle purchases, and were false statements of fact by Defendants  Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs relied upon Defendant's representations regarding the reliability of the Class vehicles and that if the vehicle would fail, then Defendants represented it would remedy the vehicle malfunction through its various warranties on the Class vehicles.  Defendants knew its representations were false regarding the reliability and integrity of the engine manufacture process and resulting oil sludge clogging engine lubrication design and of from Defendants marketing of the Class vehicles and manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts .  Defendants knew that the Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs relied on its representations regarding the reliability and integrity of its vehicles and its warranty in purchasing the vehicle in the first place and the integrity of the class vehicle.

Defendants failed to disclose and misrepresented the defects existence  or in anyway remedy the

metal debris from Defendants manufacturing process of the engine power train, and the sludge

containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving

engine parts prematurely wearing out those parts  and and resulting oil sludge clogging engine as a

result of Defendants manufacturing process of the engine power train, and the sludge containing the

metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts

prematurely wearing out those parts  to the Plaintiff Myers, Zimmerman and other Ohio Class

Plaintiffs' detriment.  Plaintiff Myers, Zimmerman and other Ohio Class Plaintiffs suffered actual

damages when Defendants would not honor its warranty when the debris from Defendants

manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with

engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to

adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts

as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the

Class which causes the class vehicles to fail prematurely for the above stated vehicles causing the

engine to seize up creating total engine failure and often creating the vehicle to catch fire Class

vehicles, the destruction of the engine debris from Defendants manufacturing process of the engine

power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an

abrasive on the moving engine parts prematurely wearing out those parts , which required the

payment of a substantial expense by Class Plaintiffs for repairs.

223.    Defendants Kia and Hyundai also engaged in unlawful conduct in violation of the Ohio

CSPA by making knowing and intentional omissions of the design defect and repair of the seized

engine from Defendants manufacturing process of the deburring the crankshaft leaving metal debris

which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation

system which fails to adequately lubricate the vital moving parts of the internal combustion engine

and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated

vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles in the Class in order to secure the sale of these vehicles, and to offer them at a premium price or costly repairs suddenly outside the warranty.

224.     Defendants Kia and Hyundai did not fully and truthfully disclose to Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs the true nature of the inherent design defect with the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, which was not readily discoverable by customers until years later.  As a result, Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs were fraudulently induced to lease and/or purchase the Class vehicles with the said design defects and all of the resultant problems that occur when the engine seizing, and self destruction of the engine.  These facts that Defendants KIA and Hyundai concealed were solely within their possession.  Further, when Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs did purchase their vehicle and bring said vehicle to a Defendants authorized dealer for service, each Defendants dealership misrepresented the fact that the problem was not covered under the warranty, misrepresented the fact that there was a technical service bulletin regarding the problem, and misrepresented the fact that the vehicle needed extensive and expensive repairs.

225.     Defendants KIA and Hyundai intended that Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs rely on the misrepresentations stated above as well as the acts of concealment of the design defect of the oil lubrication defect and omissions in disclosing the problem of the oil lubrication defect design, to the Plaintiffs' and the Class members' detriment in either purchasing the defective the class vehicles or in the repair and service of the Class vehicles.

226.     The conduct of Defendants KIA and Hyundai caused Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs to suffer an ascertainable loss and is an aggrieved consumers having suffered monetary or other harm in the form of increased initial purchase price for the defective vehicle and then costly repairs to their vehicles when the problem manifested itself and caused failure.  In addition to direct monetary losses, Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm by total loss of the vehicle because the repair costs more than what the vehicle is worth.  Further, Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in that the vehicle is unusable and its only value is its weight in scrap metal and useless plastic.

227.     A causal relationship exists between Defendants Kia and Hyundai, as seller, warrantor and manufacturer of the Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs and the Class vehicle and for its unlawful conduct and the ascertainable losses suffered by Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs as purchasers of the Class vehicles. Had the defective design in the Class vehicles been disclosed, Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs either would not have purchased the Plaintiffs and the Class vehicle or would have paid less for the Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs and the Class vehicles.

228.   Defendants act in blaming the excessive oil sludge and engine failure on the Plaintiffs by failing to perform oil changes and omissions in failing to disclose Defendants manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely and often catch fire for the above stated vehicles in the Class  was unfair or deceptive, and

73

that the alleged act "impacted [the plaintiffs'] decision to purchase the item at issue." Temple v. Fleetwood Enters., Inc., 133 F. App'x. 254, 265 (6th Cir. 2005).

229.  Defendants were sufficiently on notice that said conduct was deceptive or unconscionable under the statute at the time defendants committed the alleged acts. Ohio. Rev. Code § 1345.09(B); Marrone v. Philip Morris USA, Inc., 850 N.E.2d 31, 33 (Ohio Sup. Ct. 2006).

230.    Plaintiffs allege "(1) the alleged violation is an act or practice that was declared to be deceptive or unconscionable by a rule adopted by the Attorney General before the consumer transaction on which the action is based or (2) the alleged violation is an act or practice that a court already determined violated the OCSPA, and the court's decision was available for inspection before the transaction took place." In re Porsche Cars North Am., Inc., 880 F. Supp. 2d 801, 868 (S.D. Ohio 2012).   The Ohio Attorney General has ruled that it has the authority to enforce the  OCSPA and Defendants acts in failing to disclose Defendants manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely and often catch fire for the above stated vehicles in the Class  was unfair or deceptive and a violation of OCSPA for which the Ohio Attorney General enforces.

231.  The rule or case that satisfies Section 1345.09(B), is 109:4-3-05 Repairs or services:

> (D) In any consumer transaction involving the performance of any repair or service it shall be a deceptive act or practice for a supplier to:

> (6) Charge for any repair or service which has not been authorized by the consumer;

Defendants represented to the Plaintiffs that the repairs were not covered by its warranty and that the cost of the repairs would be the responsibility of the Plaintiffs which was not authorized by the Plaintiff consumers.

232.   The rule or case that satisfies Section 1345.09(B), is 109:4-3-13 Motor vehicle repairs or services:

> (C) In any consumer transaction involving the performance of any repair or service upon a motor vehicle it shall be a deceptive act or practice for a supplier to:
> (8) Represent that repairs or services are necessary when such is not the fact;

Defendants acts in failing to misrepresenting that the cost of the repairs should be borne by the consumer and failing to disclose Defendants manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely and often catch fire for the above stated vehicles in the Class  was unfair or deceptive and a violation of OCSPA for which the Ohio Attorney General enforces.

233.   Defendants performed an act or omission that was unfair or deceptive, and that the alleged act "impacted [the plaintiffs'] decision to purchase the item at issue." Temple, 133 F. App'x. At 265 when they failed to disclose the  manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely and often catch fire for the above stated Plaintiffs vehicles in the Class.

234.    Defendants did perpetrate deceptive acts in failing to disclose the metal debris and it had "the tendency or capacity to mislead consumers concerning a fact or circumstance material to a decision to purchase the product or service offered for sale." Davis v. Byers Volvo, No. 11-817, 2012 WL 691757, at *8 (Ohio Ct. App. 2012).   Defendants knowledge of the metal debris and their failure to disclose it constituted "(1) false, and (2) material to a consumer's decision to purchase the product or service

involved." Risner v. Regal Marine Indus., Inc., No. 11-191, 2014 WL 1270986 at *34 (S.D. Ohio Mar. 27, 2014).   The crucial aspect of whether an act is deceptive "is the likely effect on the mind of the consumer." Richards v. Beechmont Volvo, 711 N.E.2d 1088, 1090 (Ohio Ct. App. 1998).   No Plaintiff would have purchased the class vehicles with the knowledge of  the manufacturing process of deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles engine to seize while driving, self destruct and and often catch fire.

235.  Courts have found that refusal to honor an express warranty is a deceptive practice under the OCSPA. See Brown v. Lyons, 332 N.E.2d 380, 385 (Ohio Ct. Com. Pleas 1974).

WHEREFORE, Plaintiffs Myers, Zimmerman and other Ohio Class Plaintiffs, respectfully request that this Court grant judgment against Defendants Kia and Hyundai as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs Myers, Zimmerman as Ohio representative of the Classes and his counsel as Class counsel;

C. award all actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief against Defendants Kia and Hyundai;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

### COUNT X
### VIOLATION OF THE FLORIDA  DUTPA
### (On Behalf of the Florida Class)

236.    Plaintiff Reilley and other Florida Class Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

237. The Florida Deceptive and Unfair Trade Practices Act ("DUTPA") states that "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful" Florida Statutes, Title XXXIII, Chapter 501.204.

238.    Plaintiff Reilley and other Florida Class Plaintiffs purchased and/or leased as a consumer Class vehicles for personal, family or household use.

239.    Defendants Kia and Hyundai engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated Florida's DUTPA. The circumstances constituting fraud or mistake, malice, intent, knowledge, and other conditions by Defendants Kia and Hyundai created in the Plaintiff Reilley and other Florida Class Plaintiffs' mind, alleged generally, is that Defendants represented to the Plaintiff Reilley and other Florida Class Plaintiffs that it had the best warranty for its vehicles and that Defendants would stand behind its warranty.  Defendants also misrepresented the existence of the engine debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  in the Class vehicles would cause the class vehicles to prematurely fail and often catch fire.   Specifically, Defendants KIA and Hyundai each had knowledge and were each aware that the Class vehicles suffered a common design defect regarding the metal debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge

which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles engine seizing, but failed to disclose this to Plaintiff Reilley and other Florida Class Plaintiffs. Defendants Kia and Hyundai also marketed these vehicles as being of superior quality when Defendants had actual knowledge that the Class vehicles contained said known problem. These affirmative misrepresentations by Defendants were material to the vehicle purchases, and were false statements of fact by Defendants which Plaintiff Reilley and other Florida Class Plaintiffs relied upon Defendants' representations regarding the reliability of the Class vehicles and that if the vehicle would fail, then Defendants represented it would remedy the vehicle malfunction through its  warranty on the Class vehicles.  Defendants knew its representations were false regarding the reliability and integrity of the vehicle and resulting oil sludge clogging engine and of Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts .  Defendants knew that the Plaintiff Reilley and other Florida Class Plaintiffs relied on its representations regarding the reliability and integrity of its vehicles and its warranties, in purchasing the vehicle in the first place and the integrity Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  to be free from metal debris which would cause oil sludge clogging engine clogging the oil circulation system and causing the engine in the class vehicles to seize up and often catch fire, all to Plaintiff Reilley and other Florida Class Plaintiffs' detriment. Plaintiff Reilley and other Florida Class Plaintiffs suffered damages when Defendants would not honor its warranty when the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then

clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles causing the engine to seize up creating total engine failure and often creating the vehicle to catch fire, which required substantial expense and other damages by Class Plaintiffs for repairs or total vehicle replacement.

240.    Defendants Kia and Hyundai also engaged in unlawful conduct in violation of the Florida DUTPA by making knowing and intentional omissions of the design defect and repair of the seized engine from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles in the Class vehicles in order to secure the sale of these vehicles, and to offer them at a premium price or costly repairs suddenly outside the warranty.

241.    Defendants Kia and Hyundai did not fully and truthfully disclose to Plaintiff Reilley and other Florida Class Plaintiffs the true nature of the inherent design defect with the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, which was not readily discoverable by customers until years later.  As a result, Plaintiff Reilley and other Florida Class Plaintiffs were fraudulently induced to lease and/or purchase the Class vehicles with the said design defects and all of the resultant problems that occur when the engine seizes or

79

catches fire.  These facts that Defendants KIA and Hyundai concealed were solely within their

possession.  Further, when Plaintiff Reilley and other Florida Class Plaintiffs did purchase their

vehicle and bring said vehicle to a Defendants authorized dealer for service, each Defendants

dealership misrepresented the fact that the problem was not covered under the warranty,

misrepresented the fact that there was a technical service bulletin regarding the problem, and

misrepresented the fact that the vehicle needed extensive and expensive repairs. Plaintiffs suffered

damages because of the alleged dishonest acts. See Macias v. HBC of Fla., Inc., 694 So.2d 88, 90

(Fla. Dist. Ct. App. 1997) ("[I]n order for the consumer to be entitled to relief the conduct

complained of was unfair and deceptive but the consumer must also plead and prove that he or she was

aggrieved by the unfair and deceptive act."). Therefore, a claim for damages under FDUTPA requires

the Plaintiff to allege the following three elements: "(1) a deceptive act or unfair practice; (2) causation;

and (3) actual damages." City First Mortgage Corp. v. Barton, 988 So.2d 82, 86 (Fla. Dist. Ct. App.

2008).

242.    Defendants KIA and Hyundai deceived Plaintiff Reilley and other Florida Class Plaintiffs

relied on the misrepresentations stated above as well as the acts of concealment of the design defect

of the Defendants manufacturing process of the deburring the crankshaft leaving metal debris which

then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system

which fails to adequately lubricate the vital moving parts of the internal combustion engine and the

oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated

vehicles within the Class which causes the class vehicles to fail prematurely for the above stated

vehicles, which was not readily discoverable by customers until years later.

243.    The conduct of Defendants KIA and Hyundai caused Plaintiff Reilley and other Florida

Class Plaintiffs to suffer an ascertainable loss and is an aggrieved consumer having suffered actual

monetary or other damages and harm in the form of total loss of the vehicle, expensive repairs, loss

of credit for financed vehicles when the problem manifested itself and caused failure.  In addition to

direct monetary losses, Plaintiff Reilley and other Florida Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other damages and harm by total loss of the vehicle because the repair costs more than what the vehicle is worth. Further, Plaintiff Reilley and other Florida Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in that the vehicle is unusable as a vehicle and its only value is its weight in scrap metal and useless plastic.

244.    A causal relationship exists between Defendants Kia and Hyundai, as seller, warrantor and manufacturer of the Plaintiff Reilley and other Florida Class Plaintiffs and the Class vehicle and for its unlawful conduct and the ascertainable losses suffered by Plaintiff Reilley and other Florida Class Plaintiffs as purchasers of the Class vehicles. Had the defective manufacturing design and resulting oil sludge clogging the engine lubrication leading to total engine failure and vehicle fire  in the Class vehicles been disclosed, Plaintiff Reilley and other Florida Class Plaintiffs either would not have purchased the Plaintiffs and the Class vehicle or would have paid far less for the Class vehicles.  As aforesaid pled, the class vehicles are Lemons under the Florida Motor Vehicle Warranty Enforcement Act 681.10, et seq;

WHEREFORE, Plaintiff Reilley and other Florida Class Plaintiffs, respectfully request that this Court grant judgment against Defendants Kia and Hyundai as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiff Reilley as Florida representative of the Classes and her counsel as Class counsel;

C. award all actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief against Defendants Kia and Hyundai;

E. grant appropriate injunctive and/or declaratory relief, Including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

## COUNT XI
## VIOLATION OF THE KCPA
## (On Behalf of the Kentucky Class)

245.    Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

246. The Kentucky Consumer Protection Act ("KCPA") was created by the Kentucky legislature "...to give Kentucky consumers the broatest possible protection for allegedly illegal acts. In addition, KRS 446.080 requires the statutes of this Commonwealth are to be liberally construed." Stevens v. Motorist Mutual Ins. Co., Ky. S.W. 2d 819 (1988)  consumer any actual damages he has sustained" Kentucky Code of Laws, Title 37, Section 37-5-108.

247.    Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs purchased and/or leased as a consumer Class vehicles for personal, family or household use.

248.    Defendants Kia and Hyundai engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the KCPA. The circumstances constituting fraud or mistake, malice, intent, knowledge, and other conditions by Defendants Kia and Hyundai created in the Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs' mind, is that Defendants represented to the Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs that it had the best warranty for its vehicles and that Defendants would stand behind its warranty.  Specifically, Defendants KIA and Hyundai each had knowledge and were each aware that the Class vehicles suffered a common design defect regarding the debris from Defendants manufacturing process of

the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles seizing, but failed to disclose this to Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs. Defendants Kia and Hyundai also marketed these vehicles as being of superior quality when Defendants had actual knowledge that the Class vehicles contained said known problem. These affirmative misrepresentations by Defendants were material to the vehicle purchases, and were false statements of fact by Defendants  Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs relied upon Defendants' representations regarding the reliability of the Class vehicles and that if the vehicle would fail, then Defendants represented it would remedy the vehicle malfunction through its warranty on the Class vehicles.  Defendants knew its representations were false regarding the reliability and integrity of the engine manufacture and existence of the metal debris creating oil sludge clogging engine leading to total engine failure and often vehicle fire.  Defendants knew that the Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs relied on its representations regarding the reliability and integrity of its warranty in purchasing the vehicle in the first place to the Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs' detriment.  Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs suffered damages when Defendants would not honor its warranty when the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles causing the engine to seize up creating total engine

failure and often creating the vehicle to catch fire, which required the payment of a substantial expense by Class Plaintiffs for repairs or total vehicle replacement and damage to credit for a financed vehicle which was not operational.

249.    Defendants Kia and Hyundai also engaged in unlawful conduct in violation of the KCPA by making knowing and intentional omissions of the design defect and repair of the seized engine from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles in the Class vehicles in order to secure the sale of these vehicles, and to offer them at a premium price or costly repairs suddenly outside the warranty.

250.    Defendants Kia and Hyundai did not fully and truthfully disclose to Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs the true nature of the inherent design defect with the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, which was not readily discoverable by customers until years later.  As a result, Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs were fraudulently induced to lease and/or purchase the Class vehicles with the said design defects and all of the resultant problems that occur when the engine seizing, and self destruction of the engine.  These facts that Defendants KIA and Hyundai concealed were solely within their possession.  Further, when Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs did purchase their vehicle and bring said vehicle to a Defendants

authorized dealer for service, each Defendants dealership misrepresented the fact that the problem was not covered under the warranty, misrepresented the fact that there was a technical service bulletin regarding the problem, and misrepresented the fact that the vehicle needed extensive and expensive repairs.

251.    Defendants KIA and Hyundai intended that Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs rely on the misrepresentations stated above as well as the acts of concealment of the design defect and of the oil sludge clogging the lubrication  and omissions in disclosing the said problem to the Plaintiffs' and the Class members' detriment in either purchasing the defective the class vehicles or in the repair and service of the Class vehicles.

252.    The conduct Defendants KIA and Hyundai caused Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs to suffer an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in the form of increased initial purchase price for the defective vehicle and then costly repairs to their vehicles when the problem manifested itself and caused failure.  In addition to direct monetary losses, Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm by total loss of the vehicle because the repair costs more than what the vehicle is worth.  Further, Plaintiff Hunberg and other Kentucky Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in that the vehicle is unusable as a vehicle and its only value is its weight in scrap metal and useless plastic.

253.    A causal relationship exists between Defendants Kia and Hyundai, as seller, warrantor and manufacturer of the Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs and the Class vehicle and for its unlawful conduct and the ascertainable losses suffered by Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs as purchasers of the Class vehicles. Had the defective design in the Class vehicles been disclosed, Plaintiff Donna Hunberg and other Kentucky Class

Plaintiffs either would not have purchased the Plaintiffs and the Class vehicle or would have paid less for the Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs and the Class vehicles.

254.  Further, to Kentucky Lemon Law (KRS 367.840, et seq.) stated goals are (1) To protect consumers who buy or lease new motor vehicles that do not conform to applicable warranties by holding manufacturers accountable for certain nonconformities; (2) To limit the number of attempts and the amount of times that a manufacturer or its agents shall have to cure such nonconformities; and (3) To require manufacturers to provide, in as expeditious a manner as possible, a refund, not to exceed the amount in KRS 367.842, or replacement vehicle acceptable to the aggrieved consumer when the manufacturer or its agents fail to cure any nonconformity within the specified limits.

255.  Said class vehicles do not conform to applicable warranties in that they have an inherent design defect with the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, which was not readily discoverable by customers until years later.

256.    When the engine would seize up and class plaintiffs would bring their vehicles to Defendants for repair, Defendants would not cure the problem.

257.  Further, Defendants would not refund Plaintiffs or offer any replacement of the defective class vehicle.

WHEREFORE, Plaintiff Donna Hunberg and other Kentucky Class Plaintiffs respectfully request that this Court grant judgment against Defendants Kia and Hyundai as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiff Donna Hunberg as Kentucky representative of the Classes and her counsel as Class counsel;

C. award all actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief against Defendants Kia and Hyundai;

E. grant appropriate injunctive and/or declaratory relief, Including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

**COUNT XII**
**VIOLATION OF THE PENNSYLVANIA UTPCPL**
**(On Behalf of the Pennsylvania Class)**

258.    Plaintiff Keener and other Pennsylvania Class Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

259. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") protects consumers against unfair or deceptive acts or practices such as "(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another"; "(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made"; and "(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S., Section 201-2 (4).

260.    Plaintiff Keener and other Pennsylvania Class Plaintiffs purchased and/or leased as a consumer Class vehicles for personal, family or household use.

261.    Defendants Kia and Hyundai engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated Pennsylvania's UTPCPL. The circumstances constituting fraud or mistake, malice, intent, knowledge, and other conditions by Defendants Kia and Hyundai created in the Plaintiff Keener and other Pennsylvania Class Plaintiffs' mind that Defendants represented to the Plaintiff Keener and other Pennsylvania Class Plaintiffs that it had the best warranty for its vehicles and that Defendants would stand behind its warranty.  Defendants also represented that the vehicle was in good and operating condition and that Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  of the Class vehicles was trust worthy and free of any defects.  Specifically, Defendants KIA and Hyundai each had knowledge and were each aware that the Class vehicles suffered a common defect regarding debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely engine seizing, often catching fire, but failed to disclose this to Plaintiff Keener and other Pennsylvania Class Plaintiffs. Defendants Kia and Hyundai also marketed these vehicles as being of superior quality when Defendants had actual knowledge that the Class vehicles contained a known problem. These affirmative misrepresentations and deliberate omissions by Defendants were material to the vehicle purchases, and were false statements of fact by Defendants  Plaintiff Keener and other Pennsylvania Class Plaintiffs relied upon Defendants' representations regarding the reliability of the Class vehicles and that if the vehicle would fail, then Defendants represented it would remedy the vehicle malfunction through its warranties on the Class vehicles.  Defendants knew its representations were false regarding the reliability and integrity of the vehicle and the

warranty.    Defendants knew that the Plaintiff Keener and other Pennsylvania Class Plaintiffs relied on its representations regarding the reliability and integrity of its vehicle, manufacture and warranty in purchasing the vehicle in the first place and the integrity of  Defendants manufacturing process. Defendants had actual knowledge of the metal debris from Defendants manufacturing process and resulting oil sludge clogging the engine lubrication ability resulting in the engine seizing and often times the vehicle catching fire to the Plaintiff Keener and other Pennsylvania Class Plaintiffs' detriment.  Plaintiff Keener and other Pennsylvania Class Plaintiffs suffered damages when Defendants would not honor its warranty when the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles causing the engine to seize up creating total engine failure and often creating the vehicle to catch fire  for the Class vehicles, which required the payment of a substantial expense for repairs or total replacement cost of the vehicle by Class Plaintiffs.

262.    Defendant also engaged in unlawful conduct in violation of the Pennsylvania UTPCPL by making knowing and intentional omissions of the design defect and repair of the seized engine from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles in the Class vehicles in order to secure the sale of these vehicles, and to offer them at a premium price or costly repairs suddenly outside the warranty.

263.    Defendants Kia and Hyundai did not fully and truthfully disclose to Plaintiff Keener and other Pennsylvania Class Plaintiffs the true nature of the inherent design defect with the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, which was not readily discoverable by customers until years later.  As a result, Plaintiff Keener and other Pennsylvania Class Plaintiffs were fraudulently induced to lease and/or purchase the Class vehicles with the said design defects and all of the resultant problems that occur when the engine seizing, and self destruction of the engine.  These facts that Defendants KIA and Hyundai concealed were solely within their possession.  Further, when Plaintiff Keener and other Pennsylvania Class Plaintiffs did purchase their vehicle and bring said vehicle to a Defendants authorized dealer for service, each Defendants dealership misrepresented the fact that the problem was not covered under the warranty, misrepresented the fact that there was a technical service bulletin regarding the problem, and misrepresented the fact that the vehicle needed extensive and expensive repairs.

264.    Defendants KIA and Hyundai intended that Plaintiff Keener and other Pennsylvania Class Plaintiffs rely on the misrepresentations stated above as well as the acts of concealment of the design defect of the oil lubrication defect and omissions in disclosing the problem of the oil lubrication defect design, to the Plaintiffs' and the Class members' detriment in either purchasing the defective the class vehicles or in the repair and service of the Class vehicles.

265.    The conduct of Defendants KIA and Hyundai caused Plaintiff Keener and other Pennsylvania Class Plaintiffs to suffer an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in the form of increased initial purchase price for the defective vehicle and then costly repairs to their vehicles when the problem manifested itself and caused

failure.  In addition to direct monetary losses, Plaintiff Keener and other Pennsylvania Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm by total loss of the vehicle because the repair costs more than what the vehicle is worth.  Further, Plaintiff Keener and other Pennsylvania Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in that the vehicle is unusable as a vehicle and its only value is its weight in scrap metal and useless plastic.

266.    A causal relationship exists between Defendants Kia and Hyundai, as seller, warrantor and manufacturer of the Plaintiff Keener and other Pennsylvania Class Plaintiffs and the Class vehicle and for its unlawful conduct and the ascertainable losses suffered by Plaintiff Keener and other Pennsylvania Class Plaintiffs as purchasers of the Class vehicles. Had the defective design in the Class vehicles been disclosed, Plaintiff Keener and other Pennsylvania Class Plaintiffs either would not have purchased the Plaintiffs and the Class vehicle or would have paid less for the vehicle.

WHEREFORE, Plaintiff Keener and other Pennsylvania Class Plaintiffs, respectfully request that this Court grant judgment against Defendants Kia and Hyundai as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiff Keener as Pennsylvania representative of the Classes and his counsel as Class counsel;

C. award all actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief against Defendants Kia and Hyundai;

E. grant appropriate injunctive and/or declaratory relief, Including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide

Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of

the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

**COUNT XIII**
**VIOLATION OF THE Connecticut CUTPA STATUTE**
**(On Behalf of the Connecticut Class)**

267.    Plaintiff Ken Ferner and other Connecticut Class Plaintiffs incorporate by reference each

preceding and succeeding paragraph as though fully set forth at length herein.

268.    The Connecticut Unfair Trade Practices Act (CUTPA)  prohibits "unfair and deceptive acts

and practices in trade and commerce. Adopted in 1973, CUTPA provides for the recovery of

attorneys' fees and expenses, and under certain conditions, provides for punitive damages.

269.    Plaintiff Ken Ferner and other Connecticut Class Plaintiffs purchased and/or leased as a

consumer Class vehicles for personal, family or household use.

270.    Defendants Kia and Hyundai engaged unfair and deceptive acts and practices in trade and

commerce, made affirmative misrepresentations, or otherwise violated the CUTPA. The

circumstances constituting of the unfair and deceptive acts and practices in trade and commerce

were fraud or mistake, malice, intent, knowledge, and other conditions by Defendants Kia and

Hyundai which created in the Plaintiff Ferner and other Connecticut Class Plaintiffs' mind, that

Defendants represented to the Plaintiff Ken Ferner  and other Connecticut Class Plaintiffs that it had

the best warranty for its vehicles and that Defendants would stand behind its warranty.  Defendants

also represented that the vehicle was in good and operating condition and that Defendants

manufacturing process of the engine power train, and the sludge containing the metal debris, instead

of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out

those parts  of the Class vehicles was trust worthy and free of any defect.  Specifically, Defendants

KIA and Hyundai each had knowledge and were each aware that the Class vehicles suffered a

92

common defect regarding debris from Defendants manufacturing process of the deburring the

crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then

clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts

of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out

vital engine parts for the above stated vehicles within the Class which causes the class vehicles to

fail prematurely for the above stated vehicles seizing, but failed to disclose this to Plaintiff Ken

Ferner  and other Connecticut Class Plaintiffs. Defendants Kia and Hyundai also marketed these

vehicles as being of superior quality when Defendants had actual knowledge that the Class vehicles

contained a known problem. These affirmative misrepresentations and omissions of fact by

Defendants were material to the vehicle purchases by the plaintiffs and were false statements of fact

and deliberate omissions of fact by Defendants, which Plaintiff Ferner and other Connecticut Class

Plaintiffs relied, in addition to Defendants' representations regarding the reliability of the Class

vehicles and that if the vehicle would fail, then Defendants represented it would remedy the vehicle

malfunction through its warranty on the Class vehicles.  Defendants knew its representations were

false regarding the reliability and integrity of the vehicle as a result of oil sludge clogging engine

from the debris from Defendants manufacturing process of the engine power train, and the sludge

containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving

engine parts prematurely wearing out those parts  which results in the engine seizing and often

catching fire.  Defendants knew that the Plaintiff Ferner and other Connecticut Class Plaintiffs

relied on its representations regarding the reliability and integrity of its warranty in purchasing the

vehicle in the first place and the of the vehicle and warranty even though Defendants had actual

knowledge of the debris from Defendants manufacturing process of the engine power train, and the

sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the

moving engine parts prematurely wearing out those parts  and and resulting oil sludge clogging

engine and of its engine debris from Defendants manufacturing process of the engine power train,

93

and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  to the Plaintiff Ferner and other Connecticut Class Plaintiffs detriment.  Plaintiff Ken Ferner and other Connecticut Class Plaintiffs suffered damages when Defendants would not honor its warranty when the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles causing the engine to seize up creating total engine failure and often creating the vehicle to catch fire Class vehicles, the destruction of the engine debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts , which required the payment of a substantial expense by Class Plaintiffs for repairs.

271.    Defendants Kia and Hyundai also engaged in unlawful conduct in violation of the CUTPA by making knowing and intentional omissions of the defect of the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles in the Class vehicles in order to secure the sale of these vehicles, and to offer them at a premium price or costly repairs suddenly outside the warranty.

272.    Defendants Kia and Hyundai did not fully and truthfully disclose to Plaintiff Ken Ferner and other Connecticut Class Plaintiffs the true nature of the inherent design defect with the debris from

Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, which was not readily discoverable by customers until years later.  As a result, Plaintiff Ken Ferner and other Connecticut Class Plaintiffs were fraudulently induced to lease and/or purchase the Class vehicles with the said design defects and all of the resultant problems that occur when the engine seizing, and self destruction of the engine.  These facts that Defendants KIA and Hyundai concealed were solely within their possession.  Further, when Plaintiff Ken Ferner  and other Connecticut Class Plaintiffs did purchase their vehicle and bring said vehicle to a Defendants authorized dealer for service, each Defendants dealership misrepresented the fact that the problem was not covered under the warranty, misrepresented the fact that there was a technical service bulletin regarding the problem, and misrepresented the fact that the vehicle needed extensive and expensive repairs.

273.    Defendants KIA and Hyundai intended that Plaintiff Ken Ferner  and other Connecticut Class Plaintiffs rely on the misrepresentations stated above as well as the acts of concealment of the defect of the oil lubrication defect and omissions in disclosing the problem of the oil lubrication defect design, to the Plaintiffs' and the Class members' detriment in either purchasing the defective the class vehicles or in the repair and service of the Class vehicles.

274.    The conduct of Defendants KIA and Hyundai's caused Plaintiff Ken Ferner  and other Connecticut Class Plaintiffs to suffer an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in the form of cost of repairs of the vehicle or total replacement when the vehicle would catch fire as a result of the known oil lubrication defect and omissions in disclosing the problem of the oil lubrication defect, to the Plaintiffs' and the Class members when the problem manifested itself and caused failure.  In addition to direct monetary losses, Plaintiff

Ken Ferner and other Connecticut Class Plaintiffs suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm by total loss of the vehicle because the repair costs more than what the vehicle is worth. Further, Plaintiff Ken Ferner and other Connecticut Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in that the vehicle is unusable as a vehicle and its only value is its weight in scrap metal and useless plastic. Further, Plaintiff Ferner and other Connecticut Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in that he has suffered loss of credit having to pay for a useless hunk of scrap metal often defaulting on the financing of the Class vehicle.

275.    A causal relationship exists between Defendants Kia and Hyundai, as seller, warrantor, financier and manufacturer between Plaintiff Ken Ferner and other Connecticut Class Plaintiffs and the Class vehicle and for Defendants unlawful conduct and the ascertainable losses suffered by Plaintiff Ken Ferner and other Connecticut Class Plaintiffs as purchasers of the Class vehicles. Had the defect in the Class vehicles been disclosed, Plaintiff Ken Ferner and other Connecticut Class Plaintiffs either would not have purchased vehicle or would have paid less for the Class vehicles.

WHEREFORE, Plaintiff Ken Ferner and other Connecticut Class Plaintiffs, respectfully request that this Court grant judgment against Defendants Kia and Hyundai as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiff Ken Ferner as Connecticut representative of the Class and their counsel as Class counsel;

C. award all actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief against Defendants Kia and Hyundai;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

### COUNT XIV
### VIOLATION OF THE Louisiana LUTPA STATUTE
### (On Behalf of the Louisiana Class)

276.    Plaintiff April Achord and other Louisiana Class Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

277.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA") provides a private right of action to persons claiming a loss of money or property as a result of the use by another person of an unfair or deceptive method, act, or practice in the conduct of any trade or commerce. In addition to actual damages, LUTPA allows a successful claimant to recover court costs, attorneys' fees and potentially treble damages.

278.    Plaintiff April Achord and other Louisiana Class Plaintiffs purchased and/or leased as a consumer Class vehicles for personal, family or household use.

279.    Defendants Kia and Hyundai engaged unfair and deceptive acts and practices in trade and commerce, made affirmative misrepresentations, and omissions of fact or otherwise violated the LUTPA. The circumstances constituting of the unfair and deceptive acts and practices in trade and commerce, fraud, malice, intent, knowledge, omissions of fact and other conditions by Defendants Kia and Hyundai which created in the Plaintiff Achord and other Louisiana Class Plaintiffs' mind, that Defendants represented to the Plaintiff April Achord  and other Louisiana Class Plaintiffs that it had the best warranty for its vehicles and that Defendants would stand behind its warranty. Defendants also represented that the vehicle was in good and operating condition and that

Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  of the Class vehicles was trust worthy and free of any defect.   Specifically, Defendants KIA and Hyundai each had knowledge and were each aware that the Class vehicles suffered a common defect regarding debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, resulting in total engine failure and vehicles often catching fire, but failed to disclose this to Plaintiff April Achord  and other Louisiana Class Plaintiffs. Defendants Kia and Hyundai also marketed these vehicles as being of superior quality when Defendants had actual knowledge that the Class vehicles contained said known problem. These affirmative misrepresentations and omissions of fact by Defendants were material to the vehicle purchases by the plaintiffs and were false statements of fact and deliberate omissions of fact by Defendants, which Plaintiff Achord and other Louisiana Class Plaintiffs relied, in addition to Defendants' representations regarding the reliability of the Class vehicles and that if the vehicle would fail, then Defendants represented it would remedy the vehicle malfunction through its warranty on the Class vehicles.  Defendants knew its representations were false regarding the reliability and integrity of the vehicle as a result of oil sludge clogging engine from the debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  which results in the engine seizing and often catching fire.  Defendants knew that the Plaintiff Achord and other Louisiana Class Plaintiffs relied on its representations regarding the reliability and integrity of its warranty in purchasing the vehicle in the first place and

the of the vehicle and warranty even though Defendants had actual knowledge of the debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  and and resulting oil sludge clogging engine and of its engine debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  to the Plaintiff Achord and other Louisiana Class Plaintiffs detriment. Plaintiff April Achord and other Louisiana Class Plaintiffs suffered damages when Defendants would not honor its warranty when the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles causing the engine to seize up creating total engine failure and often creating the vehicle to catch fire Class vehicles, which required the payment of a substantial expense by Class Plaintiffs for repairs or total engine replacement and damaged credit from financing a vehicle which was non-operable and which Defendants represented would be paid but never was paid.

280.    Defendants Kia and Hyundai also engaged in unlawful conduct in violation of the LUTPA by making knowing and intentional omissions of the defect of the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles in the Class

vehicles in order to secure the sale of these vehicles, and to offer them at a premium price or costly repairs to repair the problem allegedly outside the warranty.

281.   Defendants Kia and Hyundai did not fully and truthfully disclose to Plaintiff April Achord and other Louisiana Class Plaintiffs the true nature of the inherent design defect with the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, which was not readily discoverable by customers until years later.  As a result, Plaintiff April Achord and other Louisiana Class Plaintiffs were fraudulently induced to lease and/or purchase the Class vehicles with the said design defects and all of the resultant problems that occur when the engine seizes, and self destruction of the engine and the vehicle often catching fire.  These facts that Defendants KIA and Hyundai concealed were solely within their possession.  Further, when Plaintiff April Achord  and other Louisiana Class Plaintiffs did purchase their vehicle and bring said vehicle to a Defendants authorized dealer for service, each Defendants dealership misrepresented the fact that the problem was not covered under the warranty, misrepresented the fact that there was a technical service bulletin regarding the problem, and misrepresented the fact that the vehicle needed extensive and expensive repairs.

282.   Defendants KIA and Hyundai intended that Plaintiff April Achord  and other Louisiana Class Plaintiffs rely on the misrepresentations stated above as well as the acts of concealment of the defect of the oil lubrication defect and omissions in disclosing the problem of the oil lubrication defect design, to the Plaintiffs' and the Class members' detriment in either purchasing the defective the class vehicles or in the repair and service of the Class vehicles.

283.    The conduct of Defendants KIA and Hyundai's caused Plaintiff April Achord  and other Louisiana Class Plaintiffs to suffer an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in the form of cost of repairs of the vehicle or total replacement when the vehicle would catch fire as a result of the known oil lubrication defect and omissions in disclosing the problem of the oil lubrication defect, to the Plaintiffs' and the Class members costly repairs to their vehicles when the problem manifested itself and caused failure.  In addition to direct monetary losses, Plaintiff April Achord  and other Louisiana Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm by total loss of the vehicle because the repair costs more than what the vehicle is worth.  Further, Plaintiff April Achord  and other Louisiana Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in that the vehicle is unusable as a vehicle and its only value is its weight in scrap metal and useless plastic.   Further, Plaintiff April Achord  and other Louisiana Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in that he has suffered loss of credit having to pay for a useless hunk of scrap metal often defaulting on the financing of the Class vehicle.

284.    A causal relationship exists between Defendants Kia and Hyundai, as seller, warrantor, financier and manufacturer between Plaintiff April Achord and other Louisiana Class Plaintiffs and the Class vehicle and for Defendants unlawful conduct and the ascertainable losses suffered by Plaintiff April Achord  and other Louisiana Class Plaintiffs as purchasers of the Class vehicles. Had the defective in the Class vehicles been disclosed, Plaintiff April Achord  and other Louisiana Class Plaintiffs either would not have purchased the Plaintiffs and the Class vehicle or would have paid less for the Class vehicles.

WHEREFORE, Plaintiff April Achord  and other Louisiana Class Plaintiffs, respectfully request that this Court grant judgment against Defendants Kia and Hyundai as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiff April Achord  as Louisiana representatives of the Classes and their counsel as Class counsel;

C. award all actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief against Defendants Kia and Hyundai;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

## COUNT XV
## VIOLATION OF THE Massachusetts MCPL STATUTE
### (On Behalf of the Massachusetts Class)

285.    Plaintiff Terri Sackos and other Massachusetts Class Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

286.    Massachusetts enacted the Consumer Protection Law in Massachusetts General Laws Chapter 93A. It states that "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." This broad language includes a variety of unfair acts.

287.    Plaintiff Terri Sackos and other Massachusetts Class Plaintiffs purchased and/or leased as a consumer Class vehicles for personal, family or household use.

288.    Defendants Kia and Hyundai engaged unfair and deceptive acts and practices in trade and commerce, made affirmative misrepresentations, or otherwise violated the MCPL. The circumstances constituting of the unfair and deceptive acts and practices in trade and commerce were fraud or mistake, malice, intent, knowledge, and other conditions by Defendants Kia and Hyundai which created in the Plaintiff Sackos and other Massachusetts Class Plaintiffs' mind, that Defendants represented to the Plaintiff Terri Sackos  and other Massachusetts Class Plaintiffs that it had the best warranty for its vehicles and that Defendants would stand behind its warranty. Defendants also represented that the vehicle was in good and operating condition and that Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  of the Class vehicles was trust worthy and free of any defect.   Specifically, Defendants KIA and Hyundai each had knowledge and were each aware that the Plaintiff's Class vehicles suffered a common defect regarding debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, but failed to disclose this to Plaintiff Terri Sackos  and other Massachusetts Class Plaintiffs.   Defendants Kia and Hyundai also marketed these vehicles as being of superior quality when Defendants had actual knowledge that the Class vehicles contained a known problem. These affirmative misrepresentations and omissions of fact by Defendants were material to the vehicle purchases by the plaintiffs and were false statements of fact and deliberate omissions of fact by Defendants, which Plaintiff Sackos and other Massachusetts Class Plaintiffs relied, in addition to Defendants' representations regarding the reliability of the Class vehicles and that if the vehicle would fail, then Defendants represented it would remedy the

vehicle malfunction through its warranty on the Class vehicles.  Defendants knew its representations were false regarding the reliability and integrity of the vehicle as a result of oil sludge clogging engine from the debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  which results in the engine seizing and often catching fire.  Defendants knew that the Plaintiff Sackos and other Massachusetts Class Plaintiffs relied on its representations regarding the reliability and integrity of its warranty in purchasing the vehicle in the first place and the of the vehicle and warranty even though Defendants had actual knowledge of the debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  and and resulting oil sludge clogging engine and of its engine debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  to the Plaintiff Sackos and other Massachusetts Class Plaintiffs detriment.  Plaintiff Terri Sackos and other Massachusetts Class Plaintiffs suffered damages when Defendants would not honor its warranty when the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles causing the engine to seize up creating total engine failure and often leading the vehicle to catch fire Class vehicles out of pocket expense for the repair, towing, rentals and severe damage to credit.

289.    Defendants Kia and Hyundai also engaged in unlawful conduct in violation of the MCPL by making knowing and intentional omissions of the defect of the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles in order to secure the sale of these vehicles, and to offer them at a premium price or costly repairs when the failure of the engine was suddenly outside the warranty.

290.    Defendants Kia and Hyundai did not fully and truthfully disclose to Plaintiff Terri Sackos and other Massachusetts Class Plaintiffs the true nature of the inherent design defect with the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely, which was not readily discoverable by customers until years later.  As a result, Plaintiff Terri Sackos and other Massachusetts Class Plaintiffs were fraudulently induced to lease and/or purchase the Class vehicles with the said design defects and all of the resultant problems that occur when the engine seizing, and self destruction of the engine.  These facts that Defendants KIA and Hyundai concealed were solely within their possession.  Further, when Plaintiff Terri Sackos  and other Massachusetts Class Plaintiffs did purchase their vehicle and bring said vehicle to a Defendants authorized dealer for service, each Defendants dealership misrepresented the fact that the problem was not covered under the warranty, misrepresented the fact that there was a technical service bulletin regarding the problem, and misrepresented the fact that the vehicle needed extensive and expensive repairs.

Class Plaintiffs did send a pre-suit demand letter to a Defendants allegedly engaged in unfair and deceptive trade practice which letter was ignored by Defendants prior to filing this complaint.

291.    Defendants KIA and Hyundai intended that Plaintiff Terri Sackos  and other Massachusetts Class Plaintiffs did rely on the misrepresentations stated above as well as the acts of concealment of the defect of the oil lubrication defect and omissions in disclosing the problem of the oil lubrication defect design, to the Plaintiffs' and the Class members' detriment in either purchasing the defective the class vehicles or in the repair and service of the Class vehicles.

292.    The conduct of Defendants KIA and Hyundai's caused Plaintiff Terri Sackos  and other Massachusetts Class Plaintiffs to suffer an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in the form of cost of repairs of the vehicle or total replacement when the vehicle would catch fire as a result of the known oil lubrication defect and omissions in disclosing the problem of the oil lubrication defect, to the Plaintiffs' and the Class members.  In addition to direct monetary losses, Plaintiff Terri Sackos  and other Massachusetts Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm by total loss of the vehicle because the repair costs more than what the vehicle is worth. Further, Plaintiff Terri Sackos  and other Massachusetts Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in that the vehicle is unusable as a vehicle and its only value is its weight in scrap metal and useless plastic. Further, Plaintiff Terri Sackos and other Massachusetts Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm including loss of credit having to pay for a useless hunk of scrap metal often defaulting on the financing of the Class vehicle.

293.    A causal relationship exists between Defendants Kia and Hyundai, as seller, business, warrantor, financier and manufacturer between Plaintiff Terri Sackos and other Massachusetts Class Plaintiffs and the Class vehicle and for Defendants unlawful conduct and the ascertainable losses

suffered by Plaintiff Terri Sackos  and other Massachusetts Class Plaintiffs as purchasers of the Class vehicles. Had the defective in the Class vehicles been disclosed, Plaintiff Terri Sackos  and other Massachusetts Class Plaintiffs either would not have purchased the Plaintiffs and the Class vehicle or would have paid less for the Class vehicles.

WHEREFORE, Plaintiff Terri Sackos  and other Massachusetts Class Plaintiffs, respectfully request that this Court grant judgment against Defendants Kia and Hyundai as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiff Terri Sackos  as Massachusetts representatives of the Classes and their counsel as Class counsel;

C. award all actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief against Defendants Kia and Hyundai;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

## COUNT XVI
## VIOLATION OF THE New York GBL Sec. 349
## (On Behalf of the New York Class)

294.    Plaintiff Jennifer Everett and other New York Class Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

295.    New York, General Business Law section 349 (NY GBL Sec. 349) bars deceptive business practices in the conduct of any business, trade, or commerce. The law is broadly construed.  NY GBL 349 has three elements: 1) the act or practice was consumer-oriented; 2) the act or practice was misleading in a material respect; and 3) the plaintiff was injured as a result of the deceptive act or practice.   In a deceptive business practice case, the plaintiff does not need to prove that the defendant intended to mislead the plaintiff.

296.    Plaintiff Jennifer Everett and other New York Class Plaintiffs purchased and/or leased as a consumer Class vehicles for personal, family or household use.

297.    Defendants Kia and Hyundai engaged in misleading in a material respect, unfair and deceptive acts and practices in trade and commerce, made affirmative misrepresentations, or otherwise violated the GBL Sec. 349. The circumstances constituting the misleading in a material respect, unfair and deceptive acts and practices in trade and commerce were fraud or mistake, malice, intent, knowledge, and other conditions by Defendants Kia and Hyundai created in the Plaintiff Everett and other New York Class Plaintiffs' mind, that Defendants represented to the Plaintiff Jennifer Everett  and other New York Class Plaintiffs that it had the best warranty for its vehicles and that Defendants would stand behind its warranty.  Defendants also represented that the vehicle was in good and operating condition and that Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  of the Class vehicles was trust worthy and free of any defect.   Specifically, Defendants KIA and Hyundai did mislead Plaintiffs in a material respect and each Defendant had knowledge and were each aware that the Class vehicles suffered a common defect regarding debris from Defendants' manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an

abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles seizing, but failed to disclose this to Plaintiff Jennifer Everett  and other New York Class Plaintiffs. Defendants Kia and Hyundai also marketed these vehicles as being of superior quality when Defendants had actual knowledge and did mislead Plaintiffs concerning the Class vehicles which contained a known problem. These affirmative misrepresentations and omissions of fact by Defendants and misleading in a material respect, were material to the vehicle purchases by the plaintiffs and were false statements of fact and deliberate omissions of fact and were misleading in a material respect by Defendants, which Plaintiff Everett and other New York Class Plaintiffs relied, in addition to Defendants' representations regarding the reliability of the Class vehicles and that if the vehicle would fail, then Defendants did mislead in a material respect when it represented it would remedy the vehicle malfunction through its warranty on the Class vehicles.  Defendants knew its representations were false regarding the reliability and integrity of the vehicle as a result of oil sludge clogging engine from the debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  which results in the engine seizing and often catching fire.  Defendants knew that the Plaintiff Everett and other New York Class Plaintiffs relied on its misleading in a material respect representations regarding the reliability and integrity of its warranty in purchasing the vehicle in the first place and the of the vehicle and warranty even though Defendants had actual knowledge of the debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts  and and resulting oil sludge clogging engine and of its engine debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out

those parts  to the Plaintiff Everett and other New York Class Plaintiffs detriment.  Plaintiff Jennifer Everett and other New York Class Plaintiffs suffered damages when Defendants would not honor its warranty when the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles causing the engine to seize up creating total engine failure and often creating the vehicle to catch fire Class vehicles, the destruction of the engine debris from Defendants manufacturing process of the engine power train, and the sludge containing the metal debris, instead of lubricating the engine, acts as an abrasive on the moving engine parts prematurely wearing out those parts, which required the payment of a substantial expense by Class Plaintiffs for repairs.

298.    Defendants Kia and Hyundai also engaged in unlawful conduct in violation of the GBL Sec. 349 by misleading in a material respect by making knowing and intentional omissions of the defect of the debris from Defendants manufacturing process of the deburring the crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles in the Class vehicles in order to secure the sale of these vehicles, and to offer them at a premium price or costly repairs suddenly outside the warranty.

299.    Defendants Kia and Hyundai did mislead in a material respect by not fully and truthfully disclosing to Plaintiff Jennifer Everett and other New York Class Plaintiffs the true nature of the inherent design defect with the debris from Defendants manufacturing process of the deburring the

crankshaft leaving metal debris which then mixes with engine oil creating oil sludge which then clogs oil ports and oil circulation system which fails to adequately lubricate the vital moving parts of the internal combustion engine and the oil sludge acts as an abrasive prematurely wearing out vital engine parts for the above stated vehicles within the Class which causes the class vehicles to fail prematurely for the above stated vehicles, which was not readily discoverable by customers until years later.  As a result, Plaintiff Jennifer Everett and other New York Class Plaintiffs were mislead and fraudulently induced to lease and/or purchase the Class vehicles with the said design defects and all of the resultant problems that occur when the engine seizing, and self destruction of the engine.  These facts that Defendants KIA and Hyundai concealed were solely within their possession.  Further, when Plaintiff Jennifer Everett  and other New York Class Plaintiffs did purchase their vehicle and bring said vehicle to a Defendants authorized dealer for service, each Defendants dealership did mislead in a material respect when it misrepresented the fact that the problem was not covered under the warranty, misrepresented the fact that there was a technical service bulletin regarding the problem, and misrepresented the fact that the vehicle needed extensive and expensive repairs.

300.    Defendants KIA and Hyundai mislead in a material respect when it intended that Plaintiff Jennifer Everett  and other New York Class Plaintiffs rely on the misrepresentations stated above as well as the acts of concealment of the defect of the oil lubrication defect and omissions in disclosing the problem of the oil lubrication defect design, to the Plaintiffs' and the Class members' detriment in either purchasing the defective the class vehicles or in the repair and service of the Class vehicles.

301.    The conduct of Defendants KIA and Hyundai's misleading in a material respect did cause Plaintiff Jennifer Everett  and other New York Class Plaintiffs to suffer an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in the form of cost of repairs of the vehicle or total replacement when the vehicle would catch fire as a result of the known oil

111

lubrication defect and omissions in disclosing the problem of the oil lubrication defect, to the Plaintiffs' and the Class members  costly repairs to their vehicles when the problem manifested itself and caused total engine failure.  In addition to direct monetary losses, Plaintiff Jennifer Everett  and other New York Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm by total loss of the vehicle because the repair costs more than what the vehicle is worth.  Further, Plaintiff Jennifer Everett  and other New York Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in that the vehicle is unusable as a vehicle and its only value is its weight in scrap metal and useless plastic.   Further, Plaintiff Jennifer Everett  and other New York Class Plaintiffs have suffered an ascertainable loss and is an aggrieved consumer having suffered monetary or other harm in that he has suffered loss of credit having to pay for a useless hunk of scrap metal often defaulting on the financing of the Class vehicle.

302.    A causal relationship exists between Defendants Kia and Hyundai, as seller, warrantor, financier and manufacturer between Plaintiff Jennifer Everett and other New York Class Plaintiffs and the Class vehicle and for Defendants unlawful conduct and the ascertainable losses suffered by Plaintiff Jennifer Everett  and other New York Class Plaintiffs as purchasers of the Class vehicles. Had the defective in the Class vehicles been disclosed, Plaintiff Jennifer Everett  and other New York Class Plaintiffs either would not have purchased the Plaintiffs and the Class vehicle or would have paid less for the Class vehicles.

WHEREFORE, Plaintiff Jennifer Everett  and other New York Class Plaintiffs, respectfully request that this Court grant judgment against Defendants Kia and Hyundai as follows:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiff Jennifer Everett  as New York representatives of the Classes and their counsel as Class counsel;

C. award all actual, compensatory, general, special, incidental, statutory, punitive, and

consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief against Defendants Kia

and Hyundai;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that

requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide

Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of

the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

## **JURY DEMAND**

Plaintiff hereby demands trial by jury of all issues properly triable thereby.

Respectfully submitted,

Law Office of Shmuel Klein, PA

Dated: November 13, 2018                    _____/s/ Shmuel Klein_____
                                            BY: Shmuel Klein